We granted the Attorney General's petition to review the Court of Criminal Appeals' decision which reversed respondent's conviction for carnal knowledge of an eight-year-old girl. Although the writ was granted May 7, 1976, the case could not be submitted until after oral argument was heard at our October term. After a careful consideration of the issues raised by the *Page 76 
petition for certiorari, we reverse and remand this cause to the Court of Criminal Appeals.
The jury found respondent guilty and fixed his punishment at life. The Court of Criminal Appeals reversed: I.A. because, in addition to Miranda[1] warnings, the trial court should have "determined that this defendant did knowingly and intelligently waive his right to remain silent"; B. because the trial court admitted the confession, although it was informed the respondent had requested counsel and none was present when the confession was taken; and, II. because the trial court excluded the public from the courtroom, denying respondent a "public trial."
We proceed to consider these holdings seriatim.
This was a revolting sex offense in which respondent assaulted the victim sexually, stabbed her repeatedly, then carried her to an abandoned burned-out house where he laid her in an old bath tub, tied her hands, and forced her panties down her throat with a stick. He left her for dead. Amazingly, the little girl regained consciousness, stumbled to a nearby house where she was taken in, naked and bloody. Thereafter, the police were called and respondent was arrested later that afternoon.
 I. Miranda
Respondent was read a "rights form" which informed him of his rights in accordance with Miranda. At this point, he asked to speak to his lawyer, George Cameron. The police called Mr. Cameron and permitted respondent to speak to him over the telephone. After speaking to his lawyer, respondent told the officers that "Mr. Cameron told him to tell the truth" and "to talk with you all."
Approximately 43 hours later, respondent confessed. Officers testified that he was questioned off and on during a period of two days, that they stopped the questioning "when he got tired of talking . . . [and when he] didn't want to talk to us, we would take him back [to his cell]." Nothing appears to show that "the statement was the product of an uninterrupted period of continuous questioning" — or that respondent "was refused access to his family, friends or counsel, or that he had been physically abused."[2] At no time after the telephone conversation with Cameron, did respondent again request counsel.
At the beginning of the statement which respondent signed, he again acknowledged he was advised of his Miranda rights and delineated them. In the statement, he confessed to the crime. At trial, his defense was irresistible impulse to commit "pedophilic sex acts."
 A.
We agree with the State's contention that the Court of Criminal Appeals erred in holding that it was necessary for the trial court to determine first that the defendant knowingly and intelligently waived his right to remain silent before proceeding to determine voluntariness. No authority is cited for this proposition. The State argues that this is a "novel" holding, is an incorrect interpretation of Miranda and is not required by any Alabama statute or case. We agree. The State contends that if a defendant did not knowingly and intelligently waive his right to remain silent a confession wouldn't be voluntary under Miranda anyway.
We agree with the Court of Criminal Appeals that, under Alabama law, "[t]he duty rests in the first instance on the trial court to determine whether a confession is voluntary." Since before Miranda our rule has been that a confession is prima facie involuntary and therefore inadmissible. Its voluntariness must be shown by the State before it can be admitted, irrespective of Miranda. Ex parte State, In re Lewisv. State, 295 Ala. 350, 329 So.2d 599 (1976). *Page 77 
We expressly reject the notion that the trial court must make some express factual or legal or factual-legal determination on the record (as appears to be the holding in the Court of Criminal Appeals' decision) that the defendant "did knowingly and intelligently waive his right to remain silent."
We reaffirm our holding in Dotson v. State, 288 Ala. 727,265 So.2d 162 (1971) (per Maddox, J.):
 ". . . The ultimate test is whether the waiver of the right to silence and to counsel was knowingly, voluntarily and intelligently made. This determination can be deduced from the particular facts and circumstances of each case and need not be determined solely upon the presence or absence of an express statement of certain words."
* * * * * *
 "A heavy burden rests upon the State to prove that a person in custody `knowingly and intelligently' waived his privilege against self-incrimination and his right to retained or appointed counsel."
See also Dotson v. State, 48 Ala. App. 381, 265 So.2d 164 (1972) (per Almon, J.) after remand by this Court.
Of course, the trial judge must first satisfy himself that a defendant has knowingly and intelligently waived his right to remain silent, and he accomplishes this when he rules that a confession is admissible. Else, his ruling would be in error. On appeal it is the duty of the appellate court to be satisfied that the record contains ". . . testimony conclusionary or detailed, as to . . ." defendant's ". . stating that he understood the Miranda warning . . ." although the record need not show that defendant ". . . expressly state[d] that he [understood]." Dotson, supra, 288 Ala. at 728,265 So.2d at 163.
It is, of course, the duty of the Court of Criminal Appeals to determine from the record in this case whether the state met its burden "in view of the totality of the circumstances surrounding the making of the in-custody statement." Dotson, supra.
Although the majority opinion of the Court of Criminal Appeals alludes to the "continuous periods of questioning" of respondent, the dissent reveals the following:
 "From the time of this man's arrest until the time the statement was executed, approximately 43 hours elapsed. Nothing in the record indicates that the statement was the product of an uninterrupted period of continuous questioning. On the contrary, the record reflects the following in Officer King's testimony:
". . . .
"`Q. . . . And how long did you observe him?
 "`A. I stayed with him approximately — well, near about two days.
"`Q. Yes, sir. Now, during that time —
"`A. (Interrupting) Off and on, we took him —
"`Q. (Interrupting) Sir?
 "`A. Off and on for two days, we would take him out and when he got tired of talking, he didn't want to talk to us, we would take him back.'
 "No evidence was presented that made it appear appellant was refused access to his family, friends or counsel, or that he had been physically abused and not given food or drink."
 B.
We also agree with the State that the Court of Criminal Appeals erred in its holding that the confession should be suppressed because the "defendant wanted an attorney and none was present when the confession was obtained."
We agree with that part of the dissent which concludes that defendant was afforded his right to confer with his own counsel viz.:
 ". . . An evidentiary hearing was held out of the jury's presence to determine the voluntariness of the confession. At its conclusion, the trial judge found the evidence sufficient to show that the *Page 78 
admission in question was freely given by the appellant.
 "The record showed the appellant was arrested at approximately 5:30 P.M., on August 13, 1974, and was brought to jail. He was advised of his constitutional rights by Officer King, who read them to him from a `Miranda Card.'
 "On being informed of these rights, appellant asked to speak to his lawyer, George Cameron. At that point, the officers contacted Mr. Cameron.
"From the record:
". . . .
"`Q. (By Mr. Thomas) Did he ask for a lawyer?
 "`A. The day this was signed and read or the day that we picked him up and it happened?
"`Q. The day you picked him up and it happened?
 "`A. He did. He wanted to talk to a lawyer that day.
"`Q. Now, did you all contact his lawyer?
"`A. We did.
"`Q. Who was that?
"`A. Mr. George Cameron.
"`Q. Did he talk with his lawyer?
"`A. Let him talk to the lawyer, himself.
 "`Q. What, if anything, did he say after he got through talking with Mr. George Cameron?
"`A. He said Mr. George Cameron —
"`MR. FULLER: (Interrupting) Excuse me —
 "`MR. THOMAS: (Interrupting) This is what the defendant said.
"`MR. FULLER: Oh; all right.
"`Q. What did he say?
 "`A. The defendant said Mr. Cameron told him to tell the truth.
"`Q. And told him to talk with you all?
"`A. (Nods head affirmatively).'"
 "Here this man was afforded the right to confer with his own counsel and only after he talked with his attorney was any interview conducted. As is shown from the record, the appellant acted on the advice of his counsel when he made the incriminating statement.
 "The statement made to the police was two pages in length and was signed at the bottom of each page by the appellant. Near the middle of the last page, the appellant initialled a correction. It was dated August 15, 1973, and indicated a time of 12:05 P.M.
 "In addition to the written confession, appellant also executed a written statement delineating his constitutional rights. Included in this statement of rights was the admonition concerning the right to confer with, presence of, and appointment of counsel.
 "Also, in the confession proper, at the very beginning, we find that appellant again was apprised of his right to counsel in this language:
"`STATE'S EXHIBIT 5
 "`I, Willie James Wright, hereby make the following statement to Det. G.J. Vaillancourt Sgt. C.L. King who I know as police officers of the City of Montgomery. I have been advised of my rights and I know that I may have an attorney present if I wish and if I cannot afford to hire one the court will appoint one for me. I make this statement of my own free with (sic) and no threats or promises have been made to me. . . .'"
We cannot agree with the Court of Criminal Appeals, which concluded in its majority opinion, "that defendant expressed a desire for an attorney, but was accorded only the privilege of talking with one over the phone" and that this method of talking to his lawyer was unsatisfactory.
We see nothing unsatisfactory about this method of consultation. Ordinarily, people in their everyday affairs consult lawyers over the telephone. Many lawyers, we judicially know, conduct most of their business over the telephone. Many lawyers, as well as many clients, prefer it this way.
There is nothing apparent to us to indicate that the officers "eavesdropped" or "listened in" on the conversation in this *Page 79 
case or engaged in some other improper activity in according respondent his right to consult his attorney. Further, it appears that respondent was satisfied with his consultation with his counsel and did not ask for or require further or different consultations with his counsel.
Very recently in Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321,46 L.Ed.2d 313 (1975) the U.S. Supreme Court was faced with a similar Miranda issue. Respondent was arrested in connection with certain robberies and was advised in accordance with Miranda. He declined to discuss the robberies, whereupon the detective ceased the interrogation. More than two hours later, after giving additional Miranda warnings, another detective questioned respondent solely about an unrelated murder. Respondent made an inculpatory statement, which was later used in his trial for murder. This resulted in his conviction. The Supreme Court held that the admission in evidence of respondent's incriminating statement did not violate Miranda principles. Respondent's right to cut off questioning was scrupulously honored, the police having immediately ceased the robbery interrogation after respondent's refusal to answer and having commenced questioning about the murder only after a significant time lapse and after a fresh set of warnings had been given respondent.
Likewise, in the case at bar, we do not see any violation ofMiranda principles.
Respondent said he wanted to talk to his lawyer. He did, albeit over the telephone. He said his lawyer said "to tell the truth" and "to talk to the officers." For aught appearing, as Judge DeCarlo observes in the dissent, respondent, in confessing, "acted on the advice of his counsel."
Moreover, before the confession was obtained, respondent was given additional Miranda warnings, at least twice.
 II. "Public Trial"
We now reach the final issue — wherein the Court of Criminal Appeals held that reversible error was committed by the trial judge in excluding the public from the courtroom during the trial of this case. We agree with the State that no reversible error resulted.
The context in which this matter arose appears in the following quotation from the Court of Criminal Appeals' opinion on rehearing:
 "Deputy District Attorney Thomas, prosecuting for the State, commented to the trial court that the facts were repulsive and the alleged victim was eight years old. He asked the court to strongly consider whether or not the courtroom should be cleared. The judge then asked Mr. Fuller, defendant's attorney, if he had any objections. He replied: `Your Honor, I believe it is within the Court's discretion, in any case. . . .' After a short discussion about certain witnesses being excused from the rule, the Deputy. Solicitor again observed, `. . . we would request that the courtroom be cleared.' The court then stated: `I am going to exercise my discretion in favor of the State, Mr. Fuller, and clear the courtroom.' Thus, it appears that the motion of the State was granted." [Sic!]
* * * * * *
 "The record is silent as to how the court went about executing the motion that it granted." (Emphasis supplied.)
We think the Court of Criminal Appeals erred in its reversal on this ground because it affirmatively appears that there was no objection; consequently, a "waiver" resulted.
The attorney for respondent plainly stated on the record:
 "Your Honor, I believe it is within the Court's discretion, in any case. . ."
We think this assertion coupled with the fact of the lack of an objection amounts to a waiver of the right to "public trial."
The general rule throughout the country is that an accused may waive this right expressly or by failing to object. 23 C.J.S.Criminal Law § 963 (8).
Only one state is cited as being contra to the general rule. It is Alabama and the *Page 80 
case cited is the first Wade case at 207 Ala. 1, 92 So. 101. In that case, in an opinion authored by Anderson, C.J., the Court held that failure to object did not operate as a waiver of this constitutional right and that it could not be waived because it was "like unto the right of trial by a jury in felony cases."207 Ala. at 4, 92 So. at 104. Anderson, C.J., was joined by McClellan, Somerville, Thomas and Miller, JJ. Gardner, J., (later Chief Justice) and Sayre, J. dissented for the reason that they considered the failure to object constituted a "waiver."
We think the dissent to be the sounder view. Particularly is this so when we consider that Chief Justice Anderson put the "non-waiver" aspect of public trial on a par with the right totrial by jury in felony cases — which he likewise considered to be "non-waivable." This court in a recent decision, Singleton v.State, 288 Ala. 519, 262 So.2d 768 (1971) (per Maddox, J.), expressly held that, with the consent of the State and the court, a defendant charged with a noncapital felony may "waive" a jury trial. Such consent was held not to be violative of public policy. If jury trial in felony cases is "waivable," we do not see why "public trial" is not also.
It is thus that we reverse and remand the decision of the Court of Criminal Appeals.
REVERSED AND REMANDED.
All the Justices concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] Dissent per DeCarlo, J., Court of Criminal Appeals' decision,340 So.2d 69.