694 So.2d 1294 (1997)
Ex parte Ernest Randy JUDD.
(Re Ernest Randy Judd v. State.)
1950078.
Supreme Court of Alabama.
April 25, 1997.
*1295 Herman Watson, Jr., and Charles H. Pullen, of Watson, Fees & Jimmerson, P.C., Huntsville, for petitioner.
Bill Pryor, Atty. Gen., and Margaret S. Childers, Asst. Atty. Gen., for respondent.
PER CURIAM.
This Court granted Ernest Randy Judd's petition for the writ of certiorari to consider his argument that his conviction was had in violation of his right to a public trial as guaranteed under Article I, § 6, of the Alabama Constitution of 1901 and the Sixth Amendment to the United States Constitution.
In his petition for certiorari review, Judd cited Rule 39(c)(4), Ala.R.App.P., arguing that the affirmance by the Court of Criminal Appeals conflicts with Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). He also cited Rule 39(c)(3), arguing that the petition presents a question of first impression in regard to the closing of a trial to the public.
Article I, § 6, Ala. Const.1901, guarantees that "in all criminal prosecutions, the accused has a right to ... a speedy, public trial." The Sixth Amendment to the United States Constitution begins: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...."
Judd was indicted on several counts of rape, sodomy, and sexual abuse. Ala.Code 1975, §§ 13A-6-61, 13A-6-63, and 13A-6-66. At the opening of the testimony, the court announced that "upon motion of the State of Alabama, which I have granted, the courtroom will be cleared during the testimony of the minor child." Judd's trial counsel objected to the closure of the courtroom, stating:
"Judge, we object to my client's constitutional rights being violated. He's entitled, under the U.S. and Alabama Constitutions, to have a free and open courtroom in this case. The Court has closed that courtroom and we believe my client's rights have been violated in that aspect."
The court overruled Judd's objection. The jury found Judd guilty of three counts of sexual abuse in the first degree and two counts of sodomy in the first degree. The circuit court entered judgments of conviction and sentenced Judd on those five convictions. The Court of Criminal Appeals affirmed by an unpublished memorandum. Judd v. State (CR-93-2063), 683 So.2d 60 (Ala.Cr.App. 1995) (table).
In construing the Sixth Amendment to the United States Constitution, the United States Supreme Court has recognized a "balance of interests" to be applied in determining the extent of the right to an open trial:
"[T]he Court has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care."
Waller v. Georgia, 467 U.S. 39, 45, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). The Waller Court stated the test for a proper courtroom closure as follows:
"[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure."
467 U.S. at 48, 104 S.Ct. at 2216.
Several United States Courts of Appeals have held that the closure of a criminal trial during the testimony of a minor child did not, under the particular circumstances presented, violate the defendant's right to a public trial. In United States v. Osborne, 68 F.3d *1296 94 (5th Cir.1995), the Fifth Circuit addressed Waller by setting out the four-part Waller test quoted above and then distinguishing Waller in the following manner:
"There is a significant difference between Waller and the instant case, however. In Waller, the Supreme Court addressed a total closure of a suppression hearing, from which all members of the public were excluded. In the present case, the district court ordered only a partial closure of the proceedings, allowing all but one of the existing spectators to remain during the victim's testimony.
"Prior to the Waller decision, this circuit [had] addressed the constitutionality of a partial closure in Aaron v. Capps, [507 F.2d 685 (5th Cir.), cert. denied, 423 U.S. 878, 96 S.Ct. 153, 46 L.Ed.2d 112 (1975)]. In Aaron, this court held that, when considering a partial closure, a trial court should look to the particular circumstances of the case to see if the defendant will still receive the safeguards of the public trial guarantee. This court reasoned that the partial closing of court proceedings does not raise the same constitutional concerns as a total closure, because an audience remains to ensure the fairness of the proceedings.
"Although this circuit has not had the opportunity to reexamine the constitutionality of a partial closing since the Waller decision, five other circuits have addressed the issue. The Second, Eighth, Ninth, Tenth, and Eleventh Circuits have all found that Waller`s stringent standard does not apply to partial closures, and have adopted a less demanding test requiring the party seeking the partial closure to show only a `substantial reason' for the closure. As in this circuit's Aaron decision, these courts have all based their decisions on a determination that partial closures do not implicate the same fairness and secrecy concerns as total closures."
68 F.3d at 98-99 (emphasis original) (footnotes omitted). See also United States v. Farmer, 32 F.3d 369 (8th Cir.1994); United States v. Galloway, 937 F.2d 542 (10th Cir. 1991), affirmed on return to remand, 963 F.2d 1388 (10th Cir.1992); United States v. Sherlock, 962 F.2d 1349 (9th Cir.1989); Douglas v. Wainwright, 714 F.2d 1532 (11th Cir.1983), vacated and remanded, 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874, panel opinion reinstated, 739 F.2d 531 (11th Cir. 1984); Geise v. United States, 262 F.2d 151 (9th Cir.1958).
Thus, the Federal courts have recognized the public interest in protecting young victims of crime, particularly young victims of sexual offenses, who are required to testify against the person accused of assaulting them. This interest provides the "substantial reason" called for in Osborne and the cases cited therein for a partial closure of a trial during the testimony of the minor victim. A "partial closure" usually means that the general public is excluded but that family and friends of the defendant are allowed to remain unless a specific reason for excluding them exists and, usually, that members of the press are allowed to remain.
Even though Alabama has a different history of applying the guarantee of a public trial as it is stated in § 6 of our Constitution, the Alabama courts have held that, under certain circumstances, a trial judge has the discretion to close a courtroom. See Wright v. State, 340 So.2d 69, 71, n. 1 (Ala.Crim.App. 1976), reversed, 340 So.2d 74, 79 (Ala.1976); Hull v. State, 232 Ala. 281, 167 So. 553 (1936). Cf. Reynolds v. State, 41 Ala.App. 202, 203, 126 So.2d 497, 497 (1961), which recognized the court's discretion to exclude children of tender years from the courtroom and to exclude such persons as necessary to preserve order in the court.
Until 1973, the authority of trial courts to use their discretion in excluding persons from the courtroom during prosecutions for rape and assault with intent to ravish was included in the Alabama Constitution as Article VI, § 169, which provided:
"In all prosecutions for rape and assault with intent to ravish, the court may, in its discretion, exclude from the courtroom all persons, except such as may be necessary in the conduct of the trial."
This specific provision, however, was not carried forward in Amendment 328, which repealed the Judicial Article (Article VI) and *1297 adopted a new Article VI as set out in Amendment 328; but the legislature adopted § 12-21-202, Ala.Code 1975, and the first clause of that section reads exactly as did § 169:
"In all prosecutions for rape and assault with intent to ravish, the court may, in its discretion, exclude from the courtroom all persons, except such as may be necessary in the conduct of the trial; and, in all other cases where the evidence is vulgar, obscene or relates to the improper acts of the sexes and tends to debauch the morals of the young, the presiding judge shall have the right, by and with the consent and agreement of the defendant, in his discretion and on his own motion, or on the motion of the plaintiffs or defendants or their attorneys, to hear and try the said case after clearing the courtroom of all or any portion of the audience whose presence is not necessary."
Even though the provisions of § 169 were not carried forward into the new Article VI, we hold that the Legislature nevertheless had the constitutional authority under its grant of power from the people to adopt § 12-21-202, and that the repeal of § 169 does not limit the power of the legislature to exclude persons from the courtroom in cases of rape or assault with intent to ravish.
We further hold that the interpretation of the Supreme Court of the United States in Waller v. Georgia is not inconsistent with the provisions of Article 1, § 6, of the Alabama Constitution of 1901, and we adopt the Waller v. Georgia test for determining when a courtroom, in cases of rape or assault with intent to ravish, can be closed without violating a defendant's constitutional right to a public trial. We hold, therefore, that a trial court has discretion under the provisions of § 12-21-202, in the proper circumstances, as here, to limit access to the courtroom if there is a showing of a substantial need to exclude some spectators. We would caution, however, that a total closure of the courtroom can be justified only in the narrowest of circumstances, as stated in Waller, supra. In most cases, a partial closure will ordinarily allow as spectators members of the press, the defendant's family, the victim's family, and similar persons whose presence is necessary to protect against secret trials or to protect other interests at stake.
Judd failed to preserve for the record the proceedings on the motion to close the courtroom, the considerations that led to the closure of the courtroom, who was cleared from the courtroom, or whether the courtroom remained closed after the victim's testimony. The burden is on the appellant to bring the record before an appellate court. Montgomery v. State, 504 So.2d 370, 372 (Ala.Crim.App.1987). Because Judd failed to have the relevant facts and proceedings included in the record, we cannot consider whether Judd's constitutional rights were violated when the courtroom was closed in his case.
AFFIRMED.
HOOPER, C.J., and MADDOX, KENNEDY, and SEE, JJ., concur.
SHORES and HOUSTON, JJ., concur in the result.
ALMON, J., dissents.
HOUSTON, Justice (concurring in the result).
The defendant was charged with first degree rape of J.D.J., in violation of Ala.Code 1975, § 13A-6-61(a)(3), and of first degree rape by forcible compulsion, along with other sexual crimes.
The Constitution of Alabama of 1901, § 169, provided:
"In all prosecutions for rape and assault with intent to ravish, the court may, in its discretion, exclude from the courtroom all persons, except such as may be necessary in the conduct of the trial."
Before the repeal of § 169 by the ratification of Amendment No. 328 (the new Judicial Article), which replaced Article VI, §§ 139-172 (the former Judicial Article), the legislature had enacted what is now Ala.Code 1975, § 12-21-202, which provides in its first clause:
"In all prosecutions for rape and assault with intent to ravish, the court may, in its discretion, exclude from the courtroom all *1298 persons, except such as may be necessary in the conduct of the trial...."
This was the law when Amendment No. 328 was ratified. Section 6.21(h) of Amendment No. 328 provides:
"Except to the extent inconsistent with the provisions of this article, all provisions of law and rules of court in force on the effective date of this article shall continue in effect until superseded in the manner authorized by the Constitution."
(Emphasis added.)
The first clause of § 12-21-202 was a provision of law in force on the effective date of Amendment No. 328. It is not inconsistent with any of the provisions of Amendment No. 328. Therefore, in my opinion, this provision continued in effect after the ratification of Amendment No. 328.
What Amendment No. 328 of the Constitution of Alabama of 1901 took away by silence, so as to prevent legislative action in the future, it expressly preserved by § 6.21(h).
The Legislature had enacted § 12-21-202 when it had express constitutional authority to do so. That was a provision of law in force on the effective date of Amendment No. 328; and it remains in force until "superseded in the manner authorized by the Constitution."
The Constitution does not permit duly enacted legislative laws to be superseded by judicial fiat; therefore, § 12-21-202 remains the law until changed by the Legislature.
Rule 9.3(b), Ala.R.Crim.P., which provides that "[a]ll proceedings shall be open to the public, unless otherwise provided by law," does not supersede the first clause of § 12-21-202, which was in effect before the promulgation of the Alabama Rules of Criminal Procedure. I know of no means whereby the first clause of § 12-21-202 has been superseded.
I feel that Justice Almon has no need to be concerned about the fate of constitutional democracy as a result of the majority's affirming Judd's convictions of sexual abuse and sodomy, after he had been indicted and tried for rape, sexual abuse, and sodomy.
I think the trial court ruled properly on this issue; therefore, I concur in the result.
ALMON, Justice (dissenting).
I am concerned about the fate of constitutional democracy if the Legislature has "authority under its grant of power from the people," 694 So.2d at 1297, to adopt statutes that directly conflict with constitutional provisions. Is the State Legislature not bound by the State Constitution that created the Legislature? Does this supposed authority apply to all constitutional provisions, or only provisions that are currently out of favor because the values they protect (here, public trials) come into conflict with other values (here, our concern for the well-being of our children)? Is it not true that many important values often compete with othersa free press with decorum in society, freedom of religion with some people's desire to bring religion into public life, a free society with our need for a lawful and orderly society? In the Constitution of the United States and the constitutions of the various States the people have chosen a balance between these competing values. If that balance may be overridden simply by legislative act, what is left of our Constitutions?
Mr. Justice Black, in his dissent in Adamson v. California, 332 U.S. 46, 68-123, 67 S.Ct. 1672, 1684-1711, 91 L.Ed. 1903, 1917-46 (1947), eloquently articulated the value of preserving the protections of the Bill of Rights, which include the right to a public trial as guaranteed by the Sixth Amendment to the United States Constitution; that right is also guaranteed in the Alabama Constitution of 1901, by § 6, which is found within the Declaration of Rights. I reproduce only the following excerpt from Justice Black's dissent:
"The first ten amendments were proposed and adopted largely because of fear that Government might unduly interfere with prized individual liberties. The people wanted and demanded a Bill of Rights written into their Constitution. The amendments embodying the Bill of Rights were intended to curb all branches of the Federal Government in the fields touched by the amendmentsLegislative, Executive, *1299 and Judicial. The Fifth, Sixth, and Eighth Amendments were pointedly aimed at confining exercise of power by courts and judges within precise boundaries, particularly in the procedure used for the trial of criminal cases. Past history provided strong reasons for the apprehensions which brought these procedural amendments into being and attest the wisdom of their adoption. For the fears of arbitrary court action sprang largely from the past use of courts in the imposition of criminal punishments to suppress speech, press, and religion. Hence, the constitutional limitations of courts' powers were, in the view of the Founders, essential supplements to the First Amendment, which was itself designed to protect the widest scope for all people to believe and to express the most divergent political, religious, and other views.
"....
"I cannot consider the Bill of Rights to be an outworn 18th Century `strait jacket' as the Twining opinion[[1]] did. Its provisions may be thought outdated abstractions by some. And it is true that they were designed to meet ancient evils. But they are the same kind of human evils that have emerged from century to century wherever excessive power is sought by the few at the expense of the many. In my judgment the people of no nation can lose their liberty so long as a Bill of Rights like ours survives and its basic purposes are conscientiously interpreted, enforced and respected so as to afford continuous protection against old, as well as new, devices and practices which might thwart those purposes."
Adamson, 332 U.S. at 70-71 and 89, 67 S.Ct. at 1685-86 and 1695, 91 L.Ed. at 1918-19 and 1929 (Black, J., dissenting) (footnote omitted).
The United States Supreme Court held in In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), that the denial to Oliver of a public trial in a Michigan contempt proceeding violated his right to due process as guaranteed by the Fourteenth Amendment. "And without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged." 333 U.S. at 271-72, 68 S.Ct. at 507, 92 L.Ed. at 693 (footnote omitted). Although the Oliver Court did not say whether the Sixth Amendment right to a public trial applies to the States, in Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), the Court took that application for granted.
Until 1973, Article VI, § 169, of the Alabama Constitution of 1901, expressly gave courts discretion to exclude persons from the courtroom during prosecutions for rape and assault with intent to ravish:
"In all prosecutions for rape and assault with intent to ravish, the court may, in its discretion, exclude from the courtroom all persons, except such as may be necessary in the conduct of the trial."
In 1973, Amendment 328 repealed the Judicial Article, Article VI, and adopted a new Article VI as set out in Amendment 328. The Judicial Article adopted by Amendment 328 does not include a provision like § 169. Thus, the constitution no longer provides an express exception to the right to a public trial. See Wright v. State, 340 So.2d 69, 71, n. 1 (Ala.Crim.App.), reversed on the issue of waiver, 340 So.2d 74, 79 (Ala.1976).
This Court, in construing § 169, limited it to its terms and refused to extend it from prosecutions for "rape and assault with intent to ravish" to prosecutions for other similar crimes, Wade v. State, 207 Ala. 1, 92 So. 101 (1921)[2]:
"Whatever may be the rule in other states, the framers of our present Constitution regarded section 6 as mandatory, and as preventing the general exclusion of court attendants and spectators by changing the rule in a few instances by inserting section 169....
"To hold that the trial court could exclude the public generally in cases not mentioned in section 169 of the Constitution *1300 would, in effect, emasculate said section, and convict the framers of our present Constitution of a vain and useless act in the insertion and adoption of said section.
"... It is therefore manifest that section 6 guarantees the accused, under all prosecutions by indictment, a `public' trial, except as to cases expressly reserved from the influence of that section by section 169, and which said last section does not include the present charge."
207 Ala. at 2, 92 So. at 102. Wade was convicted of mayhem for castrating another man. After the Court of Appeals again affirmed the conviction, this Court again reversed on certiorari review, reaffirming its holding in strong language. Ex parte Wade, 207 Ala. 241, 92 So. 104 (1922). In Hull v. State, 232 Ala. 281, 167 So. 553 (1936), Hull was convicted of having carnal knowledge of a girl under 12 years of age. The Court applied the holding of Wade and the holding of Toullee v. State, 100 Ala. 72, 14 So. 403 (1893), that a prosecution for carnal knowledge of a girl under age 12 was not a prosecution for rape, and concluded that the exclusion of the public from Hull's trial violated his right to a public trial. Cf. Reynolds v. State, 41 Ala.App. 202, 203, 126 So.2d 497, 497 (1961), which recognized the court's discretion to exclude children of tender years from the courtroom and to exclude persons as necessary to preserve order in the court,[3] but held that exclusion of all children under the age of 18 exceeded that discretion and violated the defendant's right to a public trial.
This Court has thus held, in the only precedents on point, that the exclusion of the public from a criminal trial could not be ordered "upon the theory ... that this constitutional provision [the § 6 guarantee of a public trial] should yield to the rules of society, decency, and propriety," Wade, 207 Ala. at 3, 92 So. at 102-03, except in prosecutions for the two offenses mentioned in § 169. The Court in Hull reversed a conviction on a charge similar to those on which Judd has been convicted. Now that § 169 has been repealed, the holdings of this Court in Wade and Hull would lead to the conclusion that in no prosecution can the public be excluded.
Section 12-21-202, Ala.Code 1975, provides:
"In all prosecutions for rape and assault with intent to ravish, the court may, in its discretion, exclude from the courtroom all persons, except such as may be necessary in the conduct of the trial; and, in all other cases where the evidence is vulgar, obscene or relates to the improper acts of the sexes and tends to debauch the morals of the young, the presiding judge shall have the right, by and with the consent and agreement of the defendant, in his discretion and on his own motion, or on the motion of the plaintiffs or defendants or their attorneys, to hear and try the said case after clearing the courtroom of all or any portion of the audience whose presence is not necessary."
However, the first clause of this section (before the semicolon) tracks the language of former § 169. Because § 169 has been repealed, the constitutional underpinning of § 12-21-202 is gone and that Code section cannot provide a ground for an exception to the constitutional right to a public trial. The second clause of § 12-21-202 cannot provide a basis for closing a criminal trial over the defendant's objection. Of course, a statute cannot override a constitutional provision; moreover, the second clause does not even purport to grant an exception to § 6 of the Constitution, because it allows closure of a criminal trial only "by and with the consent and agreement of the defendant."
If the Court must do what it does today (and I understand the concern for young victimized witnesses that prompts the Court's action), it should at least do it on the basis of a reasonable construction of the § 6 guarantee of a public trial, as the federal courts have done with Amendment VI to the United States Constitution. See, e.g., United *1301 States v. Osborne, 68 F.3d 94 (5th Cir. 1995); Aaron v. Capps, 507 F.2d 685 (5th Cir.), cert. denied, 423 U.S. 878, 96 S.Ct. 153, 46 L.Ed.2d 112 (1975); and the other cases cited in the plurality opinion.
Instead, the plurality relies, at least in part, on a Code section that derives from a statute that was enacted while § 169 of the Alabama Constitution was still in force. Justice Houston relies on the savings clause of Amendment 328 and the Court's rule-making power.[4]
These approaches belittle the fact that the authority for the statute was granted in § 169 but has been taken away by Amendment 328. Perhaps the omission of a provision like § 169 from the Judicial Article that was adopted by Amendment 328 was inadvertent, but such a supposition is pure speculation and does not alter the fact that the § 6 guarantee of a public trial now exists without an exception in the Constitution that would allow the legislature to pass a statute such as § 12-21-202.
As for the plurality's conclusion that Judd did not preserve a record, I strongly disagree. The circuit judge stated on the record that he had granted the State's motion to close the courtroom, and the defendant made a clear, specific, and pertinent objection on the record. Although a plurality of this Court holds that Judd did not preserve the question for review, the plurality opinion does acknowledge that the party seeking closure of the courtroomi.e., seeking an exception to a constitutional provisionhas the burden of showing, in the case of a partial closure, a "substantial reason" for the closure and, in the case of a total closure, that the stringent standards of Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), have been met. There is no showing in this record that the State met either of these burdens, and there is no indication that any proceedings on the State's motion were preserved for the record. Thus, to reject Judd's argument by attributing to him the supposed deficiency in the record essentially places the burden on the defendant to show that the trial should be open to the public; this is a reversal of the true burden.
Given the ruling and the objection in the record before us, I would hold that Judd has met his burden of showing error, and that it is the State that has not met its burden of showing that the closure was only partial, was limited to the testimony of the minor prosecutrix, and was supported by a substantial reason. While I might vote in a proper case to overrule Wade v. State and Hull v. State, discussed above, and adopt a construction of § 6 of the Constitution that would allow discretion to partially limit the public's access to a courtroom during sensitive testimony, such as that of a minor prosecutrix, I would not reach such a holding based on § 12-21-202, Ala.Code 1975, or the savings clause of Amendment 328, or this Court's rule-making power. I dissent, here, because the State did not make a showing for the record that would support closing the courtroom, or a showing that the closing of the courtroom was limited only to the testimony of the minor prosecutrix, or a showing that the defendant was allowed such spectators as would protect his right to a fair and public trial.
The descent from a relatively disorderly society that respects individual dignity and freedom to a relatively stable but authoritarian society may be a gradual one, but I suspect that it may be easier to continue descending than to turn around and go back up to the pinnacle of a free democratic society. Our constitutions were written by people who had fought their way to that pinnacle, and we undermine them at our peril. To hold that constitutional provisions may be contradicted by legislatures based on the general grant by the people of power to the *1302 legislature is to seriously undermine the concept of constitutional democracy.
NOTES
[1] Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908).
[2] Overruled on the question of waiver by Wright v. State, 340 So.2d 74, 79-80 (Ala.1976).
[3] The Wade Court also mentioned these two grounds on which a court can exclude some spectators. 207 Ala. at 2-3, 92 So. at 102. Note that this does not reach the question of excluding the general public during the testimony of a minor prosecutrix, which would be disallowed by the holding in Hull.
[4] As to Justice Houston's lack of concern for my concerns about public trials, I must side with James Madison, who cautioned in 1788:

"Since the general civilization of mankind, I believe there are more instances of the abridgement of the freedom of the people, by gradual and silent encroachments of those in power, than by violent and sudden usurpations."
James Madison, Speech at Virginia Convention, June 5, 1788, in 5 Writings of James Madison 123, 126 (Gaillard Hund ed.1904) (as quoted in Shapiro, Oxford Dictionary of American Legal Quotations, p. 153 (1993)).