WELCH, Judge.
Richard Eugene Demouey was indicted in three separate indictments for sexual offenses against C.F.[1] One indictment charged Demouey, who was 16 years of age or older, with two counts of first-degree sexual abuse of a child under the age of 12, see § 13A-6-69.1, Ala.Code 1975, by knowingly subjecting C.F., who was less than 12 years of age, to sexual contact. The other two indictments each charged Demouey with one count of first-degree sodomy, see § 13A-6-63, Ala.Code 1975, by engaging in deviate sexual intercourse with C.F., who was less than 12 years of age. The cases were consolidated for trial, and, following a trial, Demouey was convicted of two counts of first-degree sexual abuse and one count of first-degree sodomy.[2] Demouey was sentenced to 20 years’ imprisonment for the sodomy conviction and to 10 years’ imprisonment for each sexual-abuse conviction, the sentences to be served concurrently. This appeal follows.
On appeal, Demouey argues, among other things, that the trial court erred when it denied him his right to a public trial.
The evidence introduced at trial tended to show that in 2011 Demouey, a friend of C.F.’s stepfather, lived with C.F. and her family in a mobile home in Grand Bay. Demouey occupied one bedroom, 11-year-old C.F; and her sister slept in another bedroom, and C.F.’s mother, stepfather, and brother shared a third bedroom. The *357 first time Demouey made sexual contact with C.F. occurred when Demouey invited C.F. into his room. While she was in his room, Demouey touched C.F. with his hand on her vagina over her clothes. Another time C.F. went into Demouey’s room, Demouey touched C.F. on the vagina underneath her clothes. C.F. testified that it was painful. Another incident occurred at a different time in Demouey’s room when Demouey forced C.F. to touch his penis with her hand and to move her hand up and down, A fourth incident occurred when Demouey forced C.F. to put his penis in her mouth. Demouey told C.F. that she would get in trouble if she told anyone.
C.F. was 14 years old at the time of trial. The State moved for the courtroom to be cleared for the testimony of its first witness, C.F. The record reflects the following:
“[Prosecutor]: [C.F.] is fourteen now. She was eleven at the time of the incident. She is painfully shy. This is very difficult testimony for her. And so I would ask that in your discretion, you clear the courtroom.
“THE COURT: All right.
“[Defense Counsel]: I object. We have a right to a public trial; so I object.
“THE COURT: Well, you do, but I can protect the young’un. You got anybody in here who’s going to testify?
“[Defense Counsel]: No, sir.
“THE COURT: Okay. And they’re relatives?
“[Defense Counsel]: Yes, sir. No, not relatives, no. None of them are relatives of the defendant or the—
“THE COURT: Okay. Who are they?
“[Defense Counsel]: They’re just friends.
“THE COURT: Okay. Just friends. Okay.
“[Defense Counsel]: Friends of his or ,his family,
“THE COURT: All right. Well, I may—Is she up first?
“[Prosecutor]:' Yes.
“THE COURT: I’m going to—I’ll go ahead and grant' it. If they’re just friends, they can sit out in the hall until that testimony is over.
“[Defense Counsel]: Judge, will you note that we object since the defendant is entitled to a public trial under the Constitution of the State of Alabama to have people observe the trial.
“THE COURT: Okay. All right. I understand. Overruled. Go ahead and put them out for this witness. Let’s go ahead and bring the jury in.”
(R. 72-73.).
Article I, § 6, of the Alabama Constitution of 1901, guarantees that “in all criminal prosecutions, the accused has a right to ... a speedy, public trial.” The Sixth Amendment to the United States Constitution states, in pertinent part, “[i]n all criminal prosecutions, the accused shall enjoy the right to a public and speedy trial.” A trial court’s determination concerning the attendance of spectators in the courtroom will not be disturbed on appeal in the absence of an abuse of discretion. See Lehr v. State, 398 So.2d 791 (Ala.Crim.App.1981).
In Ex parte Judd, 694 So.2d 1294 (Ala.1997), the Alabama Supreme Court stated:
“In construing the Sixth Amendment to the United States Constitution, the United States Supreme Court has recognized a ‘balance of interests’ to be applied in determining the extent of the right to an open trial:
“‘[T]he Court has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant’s *358 right to a fair trial or the government’s interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care.’
“Waller v. Georgia, 467 U.S. 39, 45, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). The Waller Court stated the test for a proper courtroom closure as follows:
“ ‘[1] [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be .no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.’
“467 U.S. at 48, 104 S.Ct. at 2216.”
694 So.2d at 1295.
The Alabama Supreme Court further stated:
“[T]he interpretation of the Supreme Court of the United States in Waller v. Georgia is not inconsistent with the provisions of Article 1, § 6, of the Alabama Constitution of 1901, and we adopt the Waller v. Georgia test for determining when a courtroom, in cases of rape or assault with intent to ravish, can be closed without violating a defendant’s constitutional right to a public trial. We hold, therefore, that a trial court has discretion- under the provisions of § 12-2Í-202, in the proper circumstances, ... to limit access to the courtroom if there is a showing of substantial need to exclude some spectators. We would caution, however, that a total closure of the courtroom can be justified only in the narrowest of circumstances, as stated in Waller, supra. In most cases, a partial closure will ordinarily allow as spectators members of the press, the defendant’s family, the victim’s family, and similar persons whose presence is necessary to protect against secret trials or to protect other interests at stake.”
694 So.2d at 1297. Thus, in Ex parte Judd the Alabama Supreme Court specifically adopted the Waller test in determining whether a courtroom can be closed without violating the defendant’s right to a public trial.
In Ex parte Judd, the defendant was indicted for several counts of rape, sodomy, and sexual abuse. The trial court granted the State’s request to close the courtroom during the testimony of the minor child victim. Defense counsel objected to the closure, and the trial court overruled the objection. The defendant appealed, and his conviction and sentence were affirmed on appeal by this Court. Judd petitioned for a writ of certiorari to the Alabama Supreme Court, which, in addressing the issue, not only adopted the Waller test, but also discussed a distinction between a total closure of the courtroom and a partial closure. The Judd Court examined decisions in other circuits that had addressed the constitutionality of a partial closing since Waller was decided. Those circuits had concluded that Waller’s stringent standard does not apply to partial closures and had adopted a less demanding test in those situations requiring that the party seeking the partial closure show only a “substantial reason” for the closure. The courts determined that partial closures do not implicate the same fairness and secrecy concerns as total closures. The Judd Court stated:
“[T]he Federal courts have recognized the public interest in protecting young victims of crime, particularly young victims of sexual offenses, who are required to testify against the person accused of assaulting them. This interest provides the ‘substantial reason’ called for in [United States v.] Osborne [, 68 *359 F.3d 94 (5th Cir.1995)] and the cases cited therein for a partial closure of a trial during the testimony, of the minor victim. A ‘partial closure’ usually means that the general public is excluded but that family and friends of the defendant are allowed to remain unless a specific reason for excluding them exists and, usually, that members of the press are allowed to remain,”
Ex parte Judd, 694 So.2d at 1295-96.
The Judd Court, however, did not address whether the trial court in that case had violated the defendant’s right to a public trial, concluding that the issue had not been properly preserved for appellate review.
Following the Alabama Supreme Court’s decision, Judd petitioned the United States District Court for the Northern District of Alabama for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. That court denied relief, and Judd appealed to the United States Court of Appeals for the Eleventh Circuit. In Judd v. Haley, 250 F.3d 1308 (11th Cir.2001), the Eleventh Circuit Court of Appeals noted that a violation of one’s right to a public trial is a structural error that is not subject to a harmless-error analysis. That court, too, discussed the distinction between a total closure of a courtroom and a partial closure and the applicable test for each. The Eleventh Circuit Court of Appeals concluded:
“[A] total closure of a criminal trial during the presentation of evidence even for a temporary period, such as during the testimony of a particular witness, must be analyzed as a ‘total closure,-’ and subjected to the four-pronged test established in Waller.”
250 F.3d at 1315-16. The Eleventh Circuit Court of Appeals also concluded that the Alabama Supreme Court had erred in Ex parte Judd when it held that the issue had not been preserved because the record before the Court was inadequate from which to properly evaluate the defendant’s claim that he was denied his right to a public trial. The Eleventh Circuit Court of Appeals, finding that the trial court had completely cleared the courtroom during a witness’s testimony, applied the Waller test and held that the trial court failed to satisfy the fourth prong of that test— requiring the trial court to make adequate findings on the record to support its decision to close the courtroom. Therefore, the Eleventh Circuit held that the defendant was entitled to relief on his claim that his right to a public trial had been violated.
In Ex parte Easterwood, 980 So.2d 367 (Ala.2007), the Alabama Supreme Court again addressed whether a defendant’s right to a public trial had been violated. Easterwood was charged with first-degree sodomy. The evidence in that trial showed that Easterwood engaged in sexual misconduct with the child victim beginning when the child was 11 or 12 years old. During the trial, the State called a witness, G.W.B., who was 27 years old at the time of trial, to testify regarding a sexual relationship he had had with East-erwood, beginning when he was 11 years old. The State sought to introduce this testimony as motive of Easterwood’s sexual desire for young boys. When G.W.B. took the witness stand, he became reluctant to testify. The State moved to close the courtroom except for the jury and essential parties. The trial court, over Easterwood’s objection, granted the State’s motion because G.W.B. had expressed hesitation about testifying. The trial court allowed Easterwood to choose one member from his family to remain in the courtroom. Easterwood chose his mother. Following the jury trial in which Easterwood was convicted, he appealed to this Court. This Court affirmed Easter- *360 wood’s conviction, holding that his. right to a public trial was not violated. See Easterwood v. State, (No. CR-04-2205, June 23, 2006) 978 So.2d 74 (Ala.Crim.App.2006)(table). This Court’s holding was based in part on this Court’s reliance on § 12-21-202, which provides:
“In all prosecutions for rape and assault with intent to ravish, the court may, in its discretion, exclude from the courtroom all persons, except such as may be necessary in the conduct of the trial; and, in all other cases where the evidence is vulgar, obscene or relates to the improper acts of the sexes and tends to debauch the morals of the young, the presiding judge shall have the right, by and with the consent and agreement of the defendant, in his discretion and on his own motion, or on the motion of the plaintiffs or defendants or their attorneys, to hear and try the said case after clearing the courtroom of all or any portion of the audience whose presence is not necessary.”
Easterwood filed a petition for a writ of certiorari in the Alabama Supreme Court, and that Court granted the petition to review .whether Easterwood’s right to a public trial had been violated when the trial court allowed Easterwood to have only one representative in the courtroom during G.W.B.’s testimony.
In Ex parte Easterwood, the Alabama Supreme Court concluded that this Court erred to the extent that it relied on § 12-21-202, Ala.Code 1975. After so concluding, it then addressed the applicability of Waller. Quoting Ex parte Judd and Judd v, Haley, the Alabama Supreme Court held that “before a trial court can order a total closure of the courtroom, even on a temporary basis, the four-prong test set forth in Waller must be satisfied.” 980 So.2d at 375. Should the trial court order only a partial closure of the courtroom, it held, then the party seeking the closure need only advance a “substantial reason” for the closure. Id. The Alabama Supreme Court reversed this Court’s decision affirming the trial court’s judgment and stated:
“In finding a ‘substantial reason’ for the partial closure, as opposed to the more stringent ‘overriding interest,’ the trial court still must satisfy the three remaining requirements of the Waller test. A partial closure usually entails the exclusion of the general public from the courtroom proceedings while allowing the defendant’s family, friends, and members of the press to remain, unless a specific reason exists for excluding the latter. Judd v. Haley, supra; Douglas [v. Wainwright, 739 F.2d 531 (11th Cir.1984)].
“We now apply these principles to the facts presented by this case. The Court of Criminal Appeals concluded that the closure of the courtroom here amounted to a partial closure because, it reasoned, the trial court permitted Easterwood’s mother to remain in the courtroom during G.W.B.’s testimony. Therefore, the Court of Criminal Appeals determined that the Waller test was not applicable. We disagree. A partial closure usually contemplates that the defendant’s family, friends, and members of the press will remain in the courtroom. The record indicates that most, if not all, of the spectators in the courtroom were family and friends of Easterwood. If Easter-wood’s mother was the only person allowed to remain in the courtroom, it is doubtful that the constitutional considerations of the public-trial guarantee—promoting a fair trial, discouraging perjury, and ensuring that the prosecutor, judge, and jury act responsibly—could be adequately protected. Thus, we conclude that there was a de facto total *361 closure of the courtroom in this case, which invokes the Waller test. The trial court granted the State’s motion to clear the courtroom because G.W.B., a 27-year-old convicted felon, had expressed a reluctance or hesitancy to testify in open court. G.W.B. stated that he was reluctant to testify because he was embarrassed by the nature of the testimony and because he felt ‘outnumbered’ by the presence of Easterwood’s ‘people’ and the lack of his own. We also note that at one point during the colloquy with the trial court, G.W.B. announced that he was ‘ready’ to testify. Additionally, in response to a question from the trial, court asking whether there was anything that it could do to make G.W.B. more comfortable, G.W.B, responded ‘No,-ma'am. You’re fíne. I mean, it’s all right.’ Based on the above, we cannot say that, under Waller, an overriding interest was advanced that would justify the total closure of the courtroom in this case.”.
980 So.2d at 375.
In this case, the State requested that the courtroom be cleared while the 14-year-old victim testified, stating as a basis that the witness was shy and that the testimony was difficult for her. The trial court granted that request. The record indicates that Demouey had only friends, not family, in the courtroom and that the trial court did not allow any of those friends to remain in the courtroom during the witness’s testimony. If having only one supporter in the courtroom was found to be to be a de facto total closure of the courtroom in Ex parte Easterwood, then not allowing any supporters to remain in the courtroom is certainly a de facto total closure of the courtroom. Accordingly, the State must advance an overriding interest that is likely to be prejudiced.
We recognize the public interest in protecting victims of crime, particularly young victims of sexual offenses, who are required to testify against the person who assaulted them and whose testimony often relates to subject matter that many individuals would not feel comfortable discussing in many private forums, let alone a public one. That interest provides the “substantial reason” called for in a partial closure of a trial during a young witness’s testimony. When the trial court, however, excludes most of, if not all, the defendant’s family members or friends from the courtroom during the testimony, more than a substantial reason is required—the moving party must state an overriding interest that is likely to be prejudiced. In the present case, without more, we cannot say that the State advanced an overriding interest that was likely to be prejudiced justifying the total closure of the courtroom, Thus, Demouey’s conviction is re-verséd, and the case is remanded for further proceedings consistent with this opinion. Because of our resolution of this issue, we pretermit discussion of the remaining issue raised on appeal.
REVERSED AND REMANDED.
WINDOM, P.J., and KELLUM, ' BURKE, and JOINER, JJ., concur.

. Initials are used throughout the decision to protect the anonymity of the victim. See Rule 52, Ala. R.App. P.

. The trial court granted a motion for a judgment of acquittal as to one count of first-degree sodomy.