Ernest Randy JUDD, Petitioner-Appellant,

v.

Michael W. HALEY, Commissioner, Alabama Department of Corrections, Arnold Holt, Warden, Bullock County Correctional Facility, Bill Pryor, Respondents-Appellees.

No. 00-12786.

United States Court of Appeals,

Eleventh Circuit.

May 9, 2001.

Appeal from the United States District Court for the Northern District of Alabama.(No. 97-02735-CV–S-NE), C. Lynwood Smith, Jr., Judge.

Before WILSON and COX, Circuit Judges, and RYSKAMP[*], District Judge.

WILSON, Circuit Judge:

Ernest Randy Judd, an Alabama prisoner, appeals from the district court's dismissal of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Judd contends that the district court erred in finding that the doctrine of procedural default precluded federal review of his underlying constitutional claim-namely, that his right to a public trial under the Sixth Amendment of the United States Constitution was denied by the Alabama trial court. After reviewing the briefs and the record, and after the benefit of hearing oral argument, we conclude that the doctrine of procedural default is inapplicable in this case. The Alabama Supreme Court's resolution of Judd's appeal did not rest upon an adequate state procedural ground, and thus does not operate as a bar to our review of the merits of Judd's federal constitutional claim. Furthermore, Judd's constitutional argument is meritorious, and entitles him to habeas relief. We therefore reverse the decision of the district court, and remand the case with instructions directing the district court to grant Judd's habeas petition.

## BACKGROUND

Judd was indicted by an Etowah County, Alabama, Grand Jury in June of 1993 on multiple counts of rape, sodomy, and sexual abuse. Judd's adopted daughter, J.D.J., who was 14 at the time of the indictment, was the alleged victim of these crimes.[1]

---

[*]Honorable Kenneth L. Ryskamp, U.S. District Judge for the Southern District of Florida, sitting by designation.

[1]Due to the sensitive nature of the underlying events in this case, we will refer to the minor witness by her initials only.

On the morning Judd's trial was to begin, in June of 1994, the prosecutor and Judd's defense attorneys met with the trial judge in chambers to resolve various evidentiary matters. A court reporter was present to preserve a record of the meeting. When all of the evidentiary issues on the agenda were resolved, the judge asked if the parties were ready to proceed to the courtroom and begin the trial. After receiving an affirmative response, the judge and the parties began to move towards the door.

The court reporter was apparently the first person to leave after the conclusion of the pre-trial meeting, and was thus not available to record any of the subsequent conversations that took place in chambers. What we can glean from the recollections of the parties involved (as manifested at an evidentiary hearing held before a federal magistrate judge) is something along the lines of the following: the prosecutor turned to the judge before they reached the courtroom door, and indicated that he wanted the courtroom closed to all spectators during J.D.J's testimony. While the prosecutor could not recall the exact words he used, he explained to the judge that the reasons that he sought the closure related to the graphic nature of J.D.J's testimony, her young age, and the fact that she feared testifying in a public forum.

At this point, counsel for the defendant apparently voiced an objection to the prosecutor's proposal. Despite the objection, the judge indicated that he was inclined to order the courtroom cleared during J.D.J's testimony. The parties then proceeded into the courtroom to prepare for opening statements.

Following opening statements, the court made the following ruling on the record:

Okay, ladies and gentlemen, upon motion of the State of Alabama, which I have granted, the courtroom will be cleared during the testimony of the minor child. Y'all may leave now.

After the courtroom was cleared, Judd's attorney issued a lengthy objection, saying in part:

Judge, we object to my client's constitutional rights being violated. He's entitled, under the U.S. and Alabama Constitutions, to a free and open courtroom in this case. The Court has closed the courtroom and we believe my client's rights have been violated in that aspect.

The Court responded, "Due to the nature of the case and I don't see any prejudice to the defendant, at this time I will deny your motion." The trial record does not indicate when, if ever, spectators were permitted to return to the courtroom, though both the prosecutor and the judge testified at the federal evidentiary hearing that the courtroom was reopened following J.D.J's testimony.

The jury found Judd guilty of two counts of sodomy in the first degree and three counts of sexual abuse in the first degree. The court sentenced Judd to two concurrent thirty-year terms on the sodomy convictions, and three concurrent five-year terms on the convictions for sexual abuse.

Judd's motion for a new trial was denied, and he appealed his convictions to the Alabama Court of

Criminal Appeals. One of the arguments Judd advanced on appeal was that the trial court had violated his rights to a public trial under both the Alabama and the United States Constitutions. The Alabama Court of Criminal Appeals affirmed Judd's convictions in an unpublished memorandum, and Judd timely filed a petition for a writ of certiorari with the Alabama Supreme Court.

The Alabama Supreme Court agreed to consider Judd's claim that his right to a public trial was violated, and issued an opinion on the matter in April of 1997. *See Ex Parte Judd,* 694 So.2d 1294 (Ala.1997). The opinion began with an evaluation of relevant federal and state precedent on the scope of the right to a public trial, and sought to develop a coherent set of principles that lower courts and litigants could use as guidance when confronted with the issue. The court announced as a matter of law that there was no conflict between state and federal authorities on the scope and nature of that right. In fact, the court formally adopted the test the U.S. Supreme Court articulated in *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), as a means of determining when a defendant's right to a public trial has been violated under the Alabama Constitution in the event of a total closure of a courtroom. *See Ex Parte Judd,* 694 So.2d at 1297 ("[W]e adopt the *Waller v. Georgia* test for determining when a courtroom can be closed ... without violating a defendant's constitutional right to a public trial."). However, the court never reached the merits of Judd's appeal. The court resolved Judd's constitutional claim on a procedural ground, as explained in the final paragraph of the court's opinion:

> Judd failed to preserve for the record the proceedings on the motion to close the courtroom, the considerations that led to the closure of the courtroom, who was cleared from the courtroom, or whether the courtroom remained closed after the victims testimony. The burden is on the appellant to bring the record before an appellate court. *Montgomery v. State,* 504 So.2d 370, 372 (Ala.Crim.App.1987). Because Judd failed to have the relevant facts and proceedings included in the record, we cannot consider whether Judd's constitutional rights were violated when the courtroom was closed in his case.

> *Id.*

In August of 1997, Judd filed the instant petition for a writ of habeas corpus in the U.S. District Court for the Northern District of Alabama. In it, Judd repeated his assertion that the Alabama trial court violated his Sixth Amendment right to a public trial.

Judd's petition was initially assigned to a magistrate judge, who held an evidentiary hearing on the matter and issued a Report and Recommendation. The magistrate judge found that the doctrine of procedural default was inapplicable to Judd's case. Thus, the magistrate judge was able to reach the merits of Judd's claim, and found that Judd's Sixth Amendment right to a public trial had been violated. The magistrate judge

therefore concluded that the district court should grant Judd's habeas petition.

The district court, in a memorandum opinion, sustained the respondents' objections to the Report and Recommendation. The court found that the doctrine of procedural default precluded federal review of the merits of Judd's claim, and dismissed Judd's habeas petition. In June of 2000, the district court granted Judd a certificate of appealability, and Judd subsequently filed the instant appeal.

DISCUSSION

I.

The central issue in this appeal is whether a particular claim is subject to the doctrine of procedural default; this is a mixed question of fact and law, which we review *de novo*.[2] *See Bailey v. Nagle,* 172 F.3d 1299, 1302 (11th Cir.1999).

A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures. *See Presnell v. Kemp,* 835 F.2d 1567, 1578-79 (11th Cir.1988). A state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim. *See Harmon v. Barton,* 894 F.2d 1268, 1270 (11th Cir.1990). However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon "independent and adequate" state ground. *See Coleman v. Thompson,* 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

In *Card v. Dugger,* 911 F.2d 1494 (11th Cir.1990), we established a three-part test to enable us to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision. First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. *See id.* at 1516. Secondly, the state court's decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law." *Id.* Finally, the state procedural rule must be adequate;

---

[2]We review a district court's findings of fact in a habeas case for clear error. *See Byrd v. Hasty,* 142 F.3d 1395, 1396 (11th Cir.1998)

*i.e.,* it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine. *Id.* at 1517.

Applying this three pronged-test to the instant case, we can assume, without deciding, that the Alabama Supreme Court's decision meets the first two prongs of the *Card* test; *i.e.* that the court explicitly stated that it was relying on a procedural bar to resolve the case, and that its application of the procedural bar was not "intertwined with" interpretations of federal law. We need not address either of these issues, because the Alabama Supreme Court's opinion in *Ex Parte Judd* cannot meet the third prong of the *Card* test. This prong requires the state procedural rule to be adequate, meaning that the application of the rule must not be manifestly unfair in its treatment of Judd's federal claims. We find that the Alabama Supreme Court's application of its procedural rule in this case was fundamentally unfair to Judd, and we must conclude that it was an inadequate basis for the court's refusal to consider the merits of Judd's appeal. To understand why the procedural rule employed by the court in *Ex Parte Judd* was not adequate to preclude federal habeas review of Judd's underlying constitutional claim, we will first need to examine the relevant federal precedent on the right to a public trial afforded criminal defendants by the Sixth Amendment.

## II.

The Sixth Amendment to the United States Constitution states (in part): "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." Perhaps the most definitive statement the United States Supreme Court has issued on the scope of one's right to a public trial came in the 1984 case of *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31. In *Waller,* the Court considered the case of a group of defendants that had been convicted in Georgia state court of racketeering and gambling offenses. Much of the evidence against the defendants came from wiretap recordings that the defendants alleged were obtained without probable cause. The defendants thus moved to suppress the wiretap evidence. The state argued that the suppression hearing should be closed to spectators, as some of the recordings could violate the privacy rights of uncharged persons whose voices could be heard on the tapes. The trial court granted the state's motion, and closed the hearing (which lasted seven days) to the public. The defendants were eventually convicted, and after the Georgia Supreme Court affirmed those convictions, the United States Supreme Court granted certiorari to consider whether the closure of the suppression hearing violated the defendants' Sixth Amendment right to a public trial.

Justice Powell, writing for the Court, found that the closure of the suppression hearing did indeed violate the defendants' Sixth Amendment rights. In reaching this conclusion, the Court noted the possibility that other rights or interests may sometimes override a defendant's interest in a public trial. However, the Court pointed out that "[s]uch circumstances will be rare ... and the balance of interests must be struck with special care." *Waller,* 467 U.S. at 45, 104 S.Ct. 2210. The Court then articulated the steps that must be taken if a courtroom is to be completely cleared of spectators:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* at 48, 104 S.Ct. 2210.

Two more notes about *Waller* are relevant for our purposes. First, a violation of one's right to a public trial is structural error. *See id.* at 49, 104 S.Ct. 2210; *Johnson v. United States,* 520 U.S. 461, 469, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Waller* as one of the "limited class" of cases where structural error has been found). Structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). As such, structural errors are not subject to harmless error analysis. *See id.* at 309, 111 S.Ct. 1246. Therefore, once a petitioner demonstrates a violation of his Sixth Amendment right to a public trial, he need not show that the violation prejudiced him in any way. The mere demonstration that his right to a public trial was violated entitles a petitioner to relief.

Second, we have recognized a distinction between total closures of proceedings, as in *Waller,* and situations where the courtroom is only partially closed to spectators. *See Douglas v. Wainwright,* 739 F.2d 531, 532 (11th Cir.1984). When access to the courtroom is retained by some spectators (such as representatives of the press or the defendant's family members), we have found that the impact of the closure is not as great, and not as deserving of such a rigorous level of constitutional scrutiny. *See id.* at 533; *Aaron v. Capps,* 507 F.2d 685, 688 (5th Cir.1975).[3] Both partial and total closures burden the defendant's constitutional rights, and before either is undertaken, a court must "hold a hearing and articulate specific findings." *See Douglas,* 739 F.2d at 532. However, in the event of a partial closure, a court need merely find a "substantial" reason for the partial closure, and need not satisfy the elements of the more rigorous *Waller*

---

[3]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), we adopted as precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

test.  *See id.* at 533;  *United States v. Brazel,* 102 F.3d 1120, 1155 (11th Cir.1997).

We have relatively little precedent on the right to a public trial generally, and have not specifically addressed the question of how to analyze the total clearing of a courtroom during a portion of a criminal trial. However, the precedent that we do have defines "partial closures" as situations in which the public retains some (though not complete) access to a particular proceeding.  *See Douglas,* 739 F.2d at 532 ("The most important distinguishing factor is that *Waller* involved a total closure ... the press and the public having been specifically excluded, whereas *Douglas* entailed only a partial closure, as the press and family members of the defendant, witness, and decedent were all allowed to remain").  Nowhere does our precedent suggest that the total closure of a courtroom for a temporary period can be considered a partial closure, and analyzed as such.

Furthermore, our prior cases have articulated the values that the Constitution's public trial guarantee seeks to protect, which include permitting the public to see that a defendant is dealt with fairly, ensuring that trial participants perform their duties conscientiously, and discouraging perjury. *See id.* at 531;  *Brazel,* 102 F.3d at 1155.  These values are only moderately burdened when the courtroom is partially closed to the public, as certain spectators remain and are able to subject the proceedings to some degree of public scrutiny. However, a total closure of the courtroom, even for a temporary period, eliminates for a time the valuable role the presence of spectators can have on the performance of witnesses and court officials, and can create a public perception that the defendant is not being treated justly.

Given these facts, we think that the only conclusion that can fairly be drawn from our precedent is that a total closure of a criminal trial during the presentation of evidence even for a temporary period, such as during the testimony of a particular witness, must be analyzed as a "total closure," and subjected to the four-pronged test established in *Waller.*  Notably, our sister circuits have also applied the stringent *Waller* test to circumstances in which the courtroom was completely cleared during the testimony of particular witnesses. *See English v. Artuz,* 164 F.3d 105, 108 (2d Cir.1998);  *Bell v. Jarvis,* 236 F.3d 149, 165-66 (4th Cir.2000).

III.

Given the status of federal precedent on the Sixth Amendment's right to a public trial (as outlined above), we can now examine the adequacy of the Alabama court's application of its procedural rule in a contextually appropriate manner.

First of all, it is important to note that we do not challenge the legitimacy of the well-established Alabama procedural rule placing the burden upon the appellant to furnish reviewing courts with an adequate record on appeal. Alabama has long required appellants to ensure that the record on appeal supports their claims of error; an appellant's failure to furnish an appeals court with a record demonstrating such error dooms the appellant's case. *See Montgomery v. State,* 504 So.2d 370, 372 (Ala.Crim.App.1987); *Harris v. State,* 420 So.2d 812, 816 (Ala.Crim.App.1982); *Miller v. State,* 405 So.2d 41, 47 (Ala.Crim.App.1981). There can be no doubt that the procedural rule itself is firmly entrenched in Alabama law. Our problem is with the application of the procedural rule in this matter.

The root of our concern is that the Alabama court's determination that the record was insufficient to review a Sixth Amendment claim is itself based on a misreading of federal law concerning the right to a public trial. An examination of the supposed deficiencies in the record illustrates the problematic nature of the Alabama Supreme Court's opinion.

The Alabama Supreme Court found that Judd failed to include in the record " who was cleared from the courtroom, or whether the courtroom remained closed after the victim's testimony." *Ex Parte Judd,* 694 So.2d at 1297. Respondent contends that these are substantial omissions from the record. The Eleventh Circuit has found that partial closures of courtrooms or proceedings do not implicate the same fairness concerns as total closures, and are evaluated by reviewing courts in a less demanding way. *See Douglas,* 739 F.2d at 532-33. Absent evidence in the record as to whether the closure was partial or total, it is impossible for a reviewing court to properly evaluate whether the closure violated the defendant's Sixth Amendment rights.

The problem with this defense of the Alabama Supreme Court opinion is that a fair reading of the record reveals that it is not at all deficient as to the scope of the closure. The trial judge was unequivocal in his request that the courtroom be cleared prior to J.D.J's testimony, and the record reflects the clarity of his language. He mentioned that the courtroom was to be "cleared during the testimony of the minor child," and then stated, "[You all] may leave now." Neither of these remarks, by their terms, except any spectators. The court reporter made a notation in the record stating that "the courtroom was cleared" following the judge's ruling. There is no ambiguity in the record on this point. The absence of anything in the record suggesting that certain spectators were permitted to remain in the courtroom indicates that the clearing of the court was complete. The only conclusion that can fairly be drawn from the record the Alabama court had is that the

courtroom was completely cleared of spectators prior to the start of J.D.J's testimony.

There is nothing in the record indicating the duration of the closure, though the Alabama Supreme Court acknowledges that the closure continued at least through the testimony of J.D.J..[4] However, this omission in the record in no way precludes review of the merits of the claim. Even if spectators were permitted to return immediately following J.D.J.'s testimony, the fact remains that the record reflects a total closure of the courtroom during the testimony of a critical witness. Given the absence of *any* public access to the courtroom during this key portion of Judd's trial, the closure cannot appropriately be rationalized as "partial" under our precedent.

A fair look at the record the Alabama Supreme Court had before it in *Ex Parte Judd* thus indicates that the courtroom was completely cleared of spectators during J.D.J.'s testimony. The court was therefore obliged to apply the stringent, four-part test laid out in *Waller* to the events surrounding the closure of the courtroom in Judd's case. However, the court found other deficiencies in the record that apparently precluded it from reviewing Judd's claim under the standards articulated in *Waller*—namely, the absence of evidence concerning " the proceedings on the motion to close the courtroom [and] the considerations that led to the closure of the courtroom...." *See Ex Parte Judd,* 694 So.2d at 1297.

*Waller* places the burden upon the party seeking closure to demonstrate two things: (1) an overriding interest that is likely to be prejudiced by an open courtroom, and (2) that the closure sought is no broader than is necessary to protect that interest. *See Waller,* 467 U.S. at 48, 104 S.Ct. 2210. The trial court then must: (1) consider reasonable alternatives to a closure, and (2) make findings adequate to support a closure of the courtroom. *See id.* The holding of *Waller* thus requires the court and the party seeking a total closure to take affirmative steps ensuring that closing the courtroom is the least restrictive way to protect another valuable interest, an interest so valuable that it supersedes the rights of the defendant and the public to open proceedings in matters of public record. The absence of any evidence that these affirmative steps were taken, on the face of the record, cuts in favor of the party *objecting* to closure of the courtroom, not in favor of those who sought the closure.

Respondent defends the Alabama Supreme Court's view that the record was inadequate for it to appropriately apply *Waller* in the following way: the Alabama Supreme Court was not privy to any

---

[4]The court's note that the record did not reflect "whether the courtroom remained cleared after the victim's testimony." is an implicit acknowledgement that the court was cleared for the duration of her testimony.

information about what took place in chambers prior to the beginning of the trial-all they knew was that certain conversations relating to closing the courtroom had taken place off the record. Presumably, the drafters of the Alabama opinion assumed it possible that discussions and findings had taken place off the record that justified closure under *Waller*. Therefore, it was up to Judd to supplement the record to reflect what considerations held sway in the off the record discussions about the issue.

This argument is implausible given the holding and purposes of *Waller*. One of the precedents *Waller* relied upon was *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The *Press-Enterprise* court established the fundamental balancing test with respect to the closure of courtrooms in language quoted in and relied upon by *Waller:*

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id.* at 510, 104 S.Ct. 819; (quoted in *Waller,* 467 U.S. at 45, 104 S.Ct. 2210). The import of the text quoted above is that a court's determination that total closure of the courtroom is the least restrictive way to protect an overriding interest must be placed on the record if it is to be acceptable. There is nothing that could possibly have happened in non-transcribed, off the record proceedings that could satisfy *Waller's* requirement that the trial court articulate on-the-record findings specific enough to enable a reviewing court to evaluate the closure order.

Furthermore, the notion that a permissible *Waller* hearing could be held off the record contradicts not only the text of *Waller,* but also any contextually reasonable reading of the *Waller* opinion. The purposes of the Constitution's public trial guarantee, a guarantee that *Waller* seeks to protect, include enabling the public to see that the accused is being treated fairly, and that the judge and prosecutor are carrying out their duties responsibly. *See Waller,* 467 U.S. at 46. These values are obviously not promoted when a court holds a non-transcribed, off the record proceeding, closed to the public, that results in a decision to exclude all spectators from portions of a criminal trial.

Ultimately, it is clear that the Alabama Supreme Court had an adequate record before it to properly evaluate Judd's Sixth Amendment claim. The court misconstrued federal law in finding the record insufficient for a consideration of Judd's appeal on the merits. The Alabama Supreme Court's determination that the record was insufficient to evaluate Judd's constitutional claim was manifestly unfair in its treatment of Judd's federal arguments, and is thus not adequate for the purposes of the procedural default doctrine. *See Upshaw*

*v. Singletary,* 70 F.3d 576, 579-80 (11th Cir.1995) (finding state court's denial of post-conviction relief on procedural grounds "inadequate" due to manifest unfairness); *Spencer v. Kemp,* 781 F.2d 1458, 1470-71 (11th Cir.1986) (manifestly unfair application of state procedural rules not adequate to preclude federal review of petitioner's constitutional claim).

## IV.

In light of the above, it is clear that the district court erred when it found that the doctrine of procedural default precluded federal review of Judd's Sixth Amendment claim. Ordinarily, we would remand the case to the district court for consideration of that claim on the merits. *See, e.g., Meagher v. Dugger,* 861 F.2d 1242, 1247 (11th Cir.1988) (remanding case to district court for consideration of the merits of the underlying claim after determining that claim was not subject to the doctrine of procedural default). In this case, however, the record is more than adequate for us to review the constitutional claim without remand. The magistrate judge held a thorough evidentiary hearing on the events surrounding Judd's trial; the transcript of that hearing, coupled with the transcript of Judd's trial, provides us with sufficient information to consider the merits of Judd's Sixth Amendment claim. Remand for a consideration of the claim by the district court would amount to a waste of judicial resources in the face of such an ample record. *See, e.g., Perkins v. Matthews,* 400 U.S. 379, 386-87, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971) ("in the interest of judicial economy, we shall not remand to the district court.... The record is adequate to enable us to decide [the issue on appeal], and we shall, therefore, decide this question"); *Wheeler v. City of Pleasant Grove,* 896 F.2d 1347, 1351 (11th Cir.1990) (finding remand unnecessary after district court had already held extensive hearings on the relevant issues on appeal).

The trial transcript, along with the testimony the principal parties offered at the habeas evidentiary hearing, reflects the fact that the courtroom was completely closed to spectators during J.D.J's testimony. No spectators were permitted to view a critical portion of the state's case against Judd; we therefore will view this matter as a total closure, and will apply the test articulated in *Waller* to the instant case.

We need only consider the fourth prong of *Waller,* which requires that a court make findings adequate to support its decision to close the courtroom. In this case, we have no findings on the record that support the drastic remedy of a total closure of the courtroom during J.D.J's testimony. The court did not take any testimony concerning J.D.J's age, psychological maturity, or particular fears or concerns about testifying in open court; nor did the court explain why a total closure, rather than a partial closure, was necessary in this

case. The trial judge admitted at the evidentiary hearing that he was not aware of *Waller* at the time he made his ruling, and this is reflected in the fact that he made no effort to justify his decision to close the courtroom with any relevant findings on the record. We have no findings on the record specific enough for us to determine that the closure order was properly entered; as such, Judd has shown that the trial court did not satisfy the fourth prong of the *Waller* test. We need not consider whether the other elements of *Waller* were met in light of this fact.

As a violation of the right to a public trial is structural error, Judd need not show that he was prejudiced by the closing of the courtroom. All he must demonstrate is that the trial court did not comply with the procedures outlined in *Waller* prior to its decision to completely remove spectators from the courtroom. Judd has successfully demonstrated that the closure of the courtroom in his case was not conducted in conformity with the standards articulated in *Waller;* therefore, he is entitled to habeas relief on his Sixth Amendment claim.

## CONCLUSION

When considering Judd's direct appeal of his 1994 state court convictions, the Alabama Supreme Court applied a state procedural rule in a manner that prevented them from reaching the merits of Judd's federal constitutional claim. However, the application of the procedural rule in this case was not an adequate basis for the court's refusal to consider Judd's federal claim, and therefore does not preclude federal review of the merits of Judd's constitutional argument. Judd's federal constitutional claim, which asserts that the Alabama trial court violated his Sixth Amendment right to a public trial, is meritorious. Therefore, we reverse the decision of the district court that found Judd's Sixth Amendment claim procedurally defaulted, and remand the case to that court, with instructions to grant Judd's petition for a writ of habeas corpus.

REVERSED and REMANDED.