# WALLER *v.* GEORGIA

No. 83–321. Argued March 27, 1984—Decided May 21, 1984*

---

*Together with No. 83–322, *Cole et al.* v. *Georgia,* also on certiorari to the same court.

40

*Herbert Shafer* argued the cause for petitioners in both cases. With him on the briefs were *Charles Lister, Charles R. Smith, Burt Neuborne,* and *Charles S. Sims.*

*Mary Beth Westmoreland,* Assistant Attorney General of Georgia, argued the cause for respondent in both cases. With her on the brief were *Michael J. Bowers,* Attorney General, *James P. Googe, Jr.,* Executive Assistant Attorney General, *Marion O. Gordon,* First Assistant Attorney General, *William B. Hill, Jr.,* Senior Assistant Attorney General, *Lewis R. Slaton,* and *H. Allen Moye.*†

JUSTICE POWELL delivered the opinion of the Court.

These cases require us to decide the extent to which a hearing on a motion to suppress evidence may be closed to the public over the objection of the defendant consistently

---

†*Fred E. Inbau, Wayne W. Schmidt, James P. Manak, David Crump,* and *Daniel B. Hales* filed a brief for Americans for Effective Law Enforcement, Inc., et al. as *amici curiae* urging affirmance.

Briefs of *amici curiae* were filed for the United States by *Solicitor General Lee,* Assistant Attorney *General Trott,* Deputy Solicitor General *Frey,* and *Alan I. Horowitz;* and for the State of Arizona by *Robert K. Corbin,* Attorney General.

with the Sixth and Fourteenth Amendment right to a public trial.

## I

Acting under court authorization, Georgia police placed wiretaps on a number of phones during the last six months of 1981. The taps revealed a large lottery operation involved in gambling on the volume of stocks and bonds traded on the New York Stock Exchange. In early January 1982, law enforcement officers simultaneously executed search warrants at numerous locations, including the homes of petitioners. Petitioners and 35 others were indicted and charged with violating the Georgia Racketeer Influenced and Corrupt Organizations (Georgia RICO) Act, Ga. Code Ann. §§ 16–14–1 to 16–14–15 (1982 and Supp. 1983), and with commercial gambling and communicating gambling information in violation of Ga. Code Ann. §§ 16–12–22 and 16–12–28 (1982).

Prior to the separate trial of petitioners and 13 other defendants, petitioners moved to suppress the wiretaps and the evidence seized during the searches. They asserted, *inter alia*, that the warrants authorizing the wiretaps were unsupported by probable cause and based on overly general information, that the taps were conducted without adequate supervision, and that the resulting searches were indiscriminate, "exploratory and general." App. 11a. The State moved to close to the public any hearing on the motion to suppress. The closure motion stated that in order to validate the seizure of evidence derived from the wiretaps the State would have to introduce evidence "which [might] involve a reasonable expectation of privacy of persons other than" the defendants. *Id.*, at 6a.

On June 21, 1982, a jury was empaneled and then excused while the court heard the closure and suppression motions. The prosecutor argued that the suppression hearing should be closed because under the Georgia wiretap statute "[a]ny publication" of information obtained under a wiretap warrant

that was not "necessary and essential" would cause the information to be inadmissible as evidence. See Ga. Code Ann. § 16–11–64(b)(8) (1982).[1] The prosecutor stated that the evidence derived in the wiretaps would "involve" some persons who were indicted but were not then on trial, and some persons who were not then indicted. He said that if published in open court, the evidence "[might] very well be tainted." App. 13a. The trial court agreed. It found that insofar as the wiretap evidence related to alleged offenders not then on trial, the evidence would be tainted and could not be used in future prosecutions. *Id.*, at 14a. Over objection,[2] the court ordered the suppression hearing closed to all persons other than witnesses, court personnel, the parties, and the lawyers.

The suppression hearing lasted seven days. The parties do not dispute that less than 2½ hours were devoted to playing tapes of intercepted telephone conversations. The intercepted conversations that were played included some persons who were not then on trial, but no one who had not been named in the indictment; one person who had not been

---

[1] The statute barring publication is part of a section authorizing wiretaps pursuant to warrant. At the time of trial, the statute read:

"Any publication of the information or evidence obtained under a warrant issued hereunder other than that necessary and essential to the preparation of and actual prosecution for the crime specified in the warrant shall be an unlawful invasion of privacy under this Chapter, and shall cause such evidence and information to be inadmissible in any criminal prosecution." Ga. Code Ann. § 26–3004(k) (1977 and Supp. 1981) (subsequently recodified as § 16–11–64(b)(8)).

[2] Counsel for petitioners Waller, Thompson, Eula Burke, and W. B. Burke lodged an objection to closing the hearing. Counsel for petitioner Cole concurred in the prosecution's motion to close the suppression hearing. App. 14a, 15a. Respondent argues that Cole is precluded from challenging the closure. The Georgia Supreme Court appears to have considered the objections of all the petitioners on their merits. 251 Ga. 124, 126–127, 303 S. E. 2d 437, 441 (1983). Cole's claims in this Court are identical to those of the others. Since the cases must be remanded, we remand Cole's case as well. The state courts may determine on remand whether Cole is procedurally barred from seeking relief as a matter of state law.

indicted was mentioned in the recorded calls. The remainder of the hearing concerned such matters as the procedures used in obtaining and executing the search warrants and wiretap authorizations, the procedures followed in preserving the tape recordings, and certain allegations of police and prosecutorial misconduct.

Agreeing with the State's concession that 10 boxes of documents seized during the searches were "personal, no[n]crime related," Tr. of Suppression Hearing 635, the trial court ordered them suppressed, *id.*, at 642; App. 19a. It refused to suppress a comparable amount of other material. The case was then tried to the jury in open court. Petitioners were acquitted of the charges under the Georgia RICO statute, but were convicted of commercial gambling and communicating gambling information. Prior to the trial of the remaining persons named in the indictment, the transcript of the suppression hearing was released to the public.

The Georgia Supreme Court affirmed the convictions. 251 Ga. 124, 303 S. E. 2d 437 (1983). On the open-trial issue, the court ruled that the trial court had properly balanced petitioners' rights to a public hearing against the privacy rights of others under Georgia law and the Sixth Amendment. *Id.*, at 126–127, 303 S. E. 2d, at 441. We granted certiorari to decide whether the defendant's Sixth Amendment right to a public trial applies to a suppression hearing. 464 U. S. 959 (1983). We hold that it does, and that the trial court failed to give proper weight to Sixth Amendment concerns. Accordingly, we reverse.

## II

These cases present three questions: First, does the accused's Sixth Amendment right to a public trial extend to a suppression hearing conducted prior to the presentation of evidence to the jury? Second, if so, was that right violated here? Third, if so, what is the appropriate remedy?[3]

---

[3] Petitioners advance two Fourth Amendment arguments, both of which may be disposed of summarily. First, they assert that a forfeiture section

## A

This Court has not recently considered the extent of the accused's right under the Sixth Amendment to insist upon a public trial, and has never considered the extent to which that right extends beyond the actual proof at trial. We are not, however, without relevant precedents. In several recent cases, the Court found that the press and public have a qualified First Amendment right to attend a criminal trial. *Globe Newspaper Co.* v. *Superior Court for Norfolk County,*

---

of the Georgia RICO statute that authorizes certain warrantless seizures of all property used in or derived from a pattern of racketeering activity is facially invalid under the Fourth Amendment. See Ga. Code Ann. § 16–14–7(f) (1982 and Supp. 1983). We find that petitioners have not established that they have standing to challenge the statute in the present proceeding. It appears that all the evidence that was admitted at trial was seized under the authority of the search warrants, not pursuant to the statute. The opinion below is not to the contrary. The fact that the Georgia Supreme Court found standing does not permit us to avoid the responsibility of ensuring that our order will be other than advisory.

Petitioners' second Fourth Amendment challenge is that police so "flagrant[ly] disregard[ed]" the scope of the warrants in conducting the seizures at issue here that they turned the warrants into impermissible general warrants. Petitioners rely on lower court cases such as *United States* v. *Heldt,* 215 U. S. App. D. C. 206, 227, 668 F. 2d 1238, 1259 (1981) *(per curiam)*, cert. denied *sub nom. Hubbard* v. *United States,* 456 U. S. 926 (1982), and *United States* v. *Rettig,* 589 F. 2d 418, 423 (CA9 1978), for the proposition that in such circumstances the entire fruits of the search, and not just those items as to which there was no probable cause to support seizure, must be suppressed. Petitioners do not assert that the officers exceeded the scope of the warrant in the places searched. Rather, they say only that the police unlawfully seized and took away items unconnected to the prosecution. The Georgia Supreme Court found that all items that were unlawfully seized were suppressed. In these circumstances, there is certainly no requirement that lawfully seized evidence be suppressed as well. See, *e. g., Andresen* v. *Maryland,* 427 U. S. 463, 482, n. 11 (1976); *United States* v. *Offices Known As 50 State Distributing Co.,* 708 F. 2d 1371, 1376 (CA9 1983), cert. denied, 465 U. S. 1021 (1984); *United States* v. *Tamura,* 694 F. 2d 591, 597 (CA9 1982); *United States* v. *Holmes,* 452 F. 2d 249, 259 (CA7 1971).

457 U. S. 596 (1982); *Richmond Newspapers, Inc.* v. *Virginia*, 448 U. S. 555 (1980). We also have extended that right not only to the trial as such but also to the *voir dire* proceeding in which the jury is selected. *Press-Enterprise Co.* v. *Superior Court of California*, 464 U. S. 501 (1984). Moreover, in an earlier case in this line, *Gannett Co.* v. *DePasquale*, 443 U. S. 368 (1979), we considered whether this right extends to a pretrial suppression hearing. While the Court's opinion did not reach the question, *id.*, at 392, a majority of the Justices concluded that the public had a qualified constitutional right to attend such hearings, *id.*, at 397 (POWELL, J., concurring) (basing right on First Amendment); *id.*, at 406 (BLACKMUN, J., joined by BRENNAN, WHITE, and MARSHALL, JJ., dissenting in part) (basing right on Sixth Amendment).

In each of these cases the Court has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care. We stated the applicable rules in *Press-Enterprise:*

> "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." 464 U. S., at 510.

Accord, *Globe Newspaper Co.*, *supra*, at 606–607; *Richmond Newspapers*, *supra*, at 580–581 (opinion of BURGER, C. J.); *Gannett*, 443 U. S., at 392–393 *(semble); id.*, at 400–401 (POWELL, J., concurring); *id.*, at 440–446 (BLACKMUN, J., dissenting in part).

As noted, the analysis in these cases has proceeded largely under the First Amendment. Nevertheless, there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public. The central aim of a criminal proceeding must be to try the accused fairly, and "[o]ur cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant." *Gannett*, 443 U. S., at 380.

> "'"The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . . ."'" *Ibid.* (quoting *In re Oliver*, 333 U. S. 257, 270, n. 25 (1948), in turn quoting 1 T. Cooley, Constitutional Limitations 647 (8th ed. 1927)).[4]

In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury. See *In re Oliver*, *supra*, at 270, n. 24; *Douglas* v. *Wainwright*, 714 F. 2d 1532, 1541 (CA11 1983), cert. pending, Nos. 83–817, 83–995; *United States ex rel. Bennett* v. *Rundle*, 419 F. 2d 599, 606 (CA3 1969).

These aims and interests are no less pressing in a hearing to suppress wrongfully seized evidence. As several of the individual opinions in *Gannett* recognized, suppression hearings often are as important as the trial itself. 443 U. S., at 397, n. 1 (POWELL, J., concurring); *id.*, at 434–436 (BLACK-

---

[4] Accord, *Estes* v. *Texas*, 381 U. S. 532, 588 (1965) (Harlan, J., concurring) ("Essentially, the public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings"); *In re Oliver*, 333 U. S., at 270 ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power").

MUN, J., dissenting in part); see also *id.*, at 397 (BURGER, C. J., concurring). In *Gannett,* as in many cases, the suppression hearing was the *only* trial, because the defendants thereafter pleaded guilty pursuant to a plea bargain.

In addition, a suppression hearing often resembles a bench trial: witnesses are sworn and testify, and of course counsel argue their positions. The outcome frequently depends on a resolution of factual matters. See *id.*, at 434 (BLACKMUN, J., dissenting in part). The need for an open proceeding may be particularly strong with respect to suppression hearings. A challenge to the seizure of evidence frequently attacks the conduct of police and prosecutor. As the Court of Appeals for the Third Circuit has noted, "[s]trong pressures are naturally at work on the prosecution's witnesses to justify the propriety of their conduct in obtaining" the evidence. *Rundle, supra,* at 605. The public in general also has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny.[5] In sum, we hold that under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in *Press-Enterprise* and its predecessors.[6]

---

[5] To the extent there is an independent public interest in the Sixth Amendment public-trial guarantee, see *Gannett,* 443 U. S., at 383; cf. *Globe Newspaper,* 457 U. S., at 604, it applies with full force to suppression hearings. This case is an example. The defendants alleged that police conducted general searches and wholesale seizures in over 150 homes, and eavesdropped on more than 800 hours of telephone conversations by means of effectively unsupervised wiretaps. Cf. *id.*, at 605 (First Amendment right of access to criminal trials "ensure[s] that [the] constitutionally protected 'discussion of governmental affairs' is an informed one").

[6] One of the reasons often advanced for closing a trial—avoiding tainting of the jury by pretrial publicity, *e. g., Press-Enterprise,* 464 U. S., at 510—is largely absent when a defendant makes an informed decision to object to the closing of the proceeding. In addition, that rationale is further attenuated where, as here, the jurors have been empaneled and instructed not to discuss the case or read or view press accounts of the matter. Tr. 238–239, 240–241, 293–294.

Petitioners also make a claim to an open trial under the First Amendment. In view of our holding, there is no need to discuss that claim.

B

Applying these tests to the cases at bar, we find the closure of the entire suppression hearing plainly was unjustified. Under *Press-Enterprise*, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. In this case, the only evidence about which the prosecutor expressed concern was the information derived from the wiretaps; he argued that unnecessary "publication" would render the taps inadmissible under the Georgia wiretap statute. App. 13a. The Georgia Supreme Court advanced the more general, but essentially identical, interest in protecting the privacy of persons not before the court. 251 Ga., at 126–127, 303 S. E. 2d, at 441. Under certain circumstances, these interests may well justify closing portions of a suppression hearing to the public. See *Press-Enterprise*, 464 U. S., at 511–512.

Here, however, the State's proffer was not specific as to whose privacy interests might be infringed, how they would be infringed, what portions of the tapes might infringe them, and what portion of the evidence consisted of the tapes. As a result, the trial court's findings were broad and general, and did not purport to justify closure of the entire hearing.[7] The court did not consider alternatives to immediate closure of the entire hearing: directing the government to provide more detail about its need for closure, *in camera* if necessary, and closing only those parts of the hearing that jeopar-

---

[7] The court's only relevant finding was as follows: "If you plan to offer evidence, or if you are going to offer evidence that relates not only to those defendants not on trial but to other offenders, . . . in my judgment insofar as they are concerned, it would amount to a publication and it would be tainted because of the publication." App. 14a.

dized the interests advanced.[8] As it turned out, of course, the closure was far more extensive than necessary. The tapes lasted only 2½ hours of the 7-day hearing, and few of them mentioned or involved parties not then before the court.

## C

The question that remains is what relief should be ordered to remedy this constitutional violation. Petitioners argue that a new trial on the merits should be ordered. The Solicitor General, appearing on behalf of the United States as *amicus curiae*, suggests that at most only a new suppression hearing be directed. The parties do not question the consistent view of the lower federal courts that the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee.[9] We agree

---

[8] The *post hoc* assertion by the Georgia Supreme Court that the trial court balanced petitioners' right to a public hearing against the privacy rights of others cannot satisfy the deficiencies in the trial court's record. The assertion finds little or no support in the record, and is itself too broad to meet the *Press-Enterprise* standard.

[9] See, *e. g., Douglas* v. *Wainwright,* 714 F. 2d 1532, 1542 (CA11 1983) (citing cases), cert. pending, Nos. 83–817, 83–995. See also *Levine* v. *United States,* 362 U. S. 610, 627, n. (1960) (BRENNAN, J., dissenting) ("[T]he settled rule of the federal courts [is] that a showing of prejudice is not necessary for reversal of a conviction not had in public proceedings"). The general view appears to be that of the Court of Appeals for the Third Circuit. It noted in an en banc opinion that a requirement that prejudice be shown "would in most cases deprive [the defendant] of the [public-trial] guarantee, for it would be difficult to envisage a case in which he would have evidence available of specific injury." *United States ex rel. Bennett* v. *Rundle,* 419 F. 2d 599, 608 (1969). While the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance, the Framers plainly thought them nonetheless real. See also *State* v. *Sheppard,* 182 Conn. 412, 418, 438 A. 2d 125, 128 (1980) ("Because demonstration of prejudice in this kind of case is a practical impossibility, prejudice must necessarily be implied"); *People* v. *Jones,* 47 N. Y. 2d 409, 416, 391 N. E. 2d 1335, 1340 (1979) ("The harmless error rule is no way to gauge the great, though intangible, societal loss that flows" from closing courthouse doors).

with that view, but we do not think it requires a new trial in this case. Rather, the remedy should be appropriate to the violation. If, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest. Cf. *Goldberg* v. *United States*, 425 U. S. 94, 111 (1976); *Jackson* v. *Denno*, 378 U. S. 368, 394–396 (1964).

In these cases, it seems clear that unless the State substantially alters the evidence it presents to support the searches and wiretaps here, significant portions of a new suppression hearing must be open to the public. We remand to the state courts to decide what portions, if any, may be closed. This decision should be made in light of conditions at the time of the new hearing, and only interests that still justify closure should be considered. A new trial need be held only if a new, public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or in some other material change in the positions of the parties.

The judgments below are reversed, and the cases are remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*