**Raymond CAMPBELL, Petitioner–Appellant,**

v.

**John SABOURIN, Supt.; Chateaugay Correctional Facility; Dennis C. Vacco, Respondents–Appellees.**

No. 99–2228.

United States Court of Appeals, Second Circuit.

April 18, 2001.

Natalie Rea, Legal Aid Society, New York, NY, for appellant.

Alyson J. Gill, Assistant District Attorney, for Richard A. Brown, District Attorney, Queens County, Kew Gardens, NY; John M. Castellano on the brief, for appellee.

Present McLAUGHLIN, CALABRESI, and POOLER, Circuit Judges.

*SUMMARY ORDER*

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be and it hereby is RE-MANDED for further proceedings.

On February 27, 1992, petitioner-appellant Raymond Campbell was arrested in a "buy-and-bust" operation in Queens, New York. He was subsequently charged with selling four vials of crack cocaine to an undercover police officer and, at his trial, prosecutors moved to close the courtroom during the testimony of the undercover officer, Gail D. Hinds. At a hearing to determine whether closure was appropriate, Officer Hinds testified that, at the time of trial, she was "actively engaged in

undercover work in the County of Queens," that she had "pending cases in court," and that she had "a few" lost subjects.[1] Officer Hinds also explained that she had testified in Queens Criminal Court once before and that she had cases pending before a Grand Jury.[2]

Hinds was asked: "would testifying in an open court compromise your ability to do your job as an undercover officer?" She replied "Yes," and stated that "It would effect [sic] without a doubt my safety and the safety of the officers that might be around me, and also my cases that I have pending, the cases I have open, and my ability to do undercover work." The court inquired of Hinds whether "it would effect [sic][her] ability to purchase narcotics in an undercover capacity on the street if [her] status as an undercover officer became generally known." Officer Hinds said that "without a doubt," it would. The court asked whether her "safety would be compromised if those suspects against whom [she was] scheduled to testify and who are at liberty learned of [her] identity as an undercover officer." She said that it would. After argument from counsel, the judge ordered that the courtroom be closed during Officer Hinds's testimony.

Petitioner was then tried before a jury and convicted.[3]

Campbell challenged his conviction in the Appellate Division, Second Department, arguing that the closure of the courtroom violated his Sixth Amendment right to a public trial. *See Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The Appellate Division affirmed. *See People v. Campbell*, 204 A.D.2d 474, 614 N.Y.S.2d 170 (2d Dept. 1994). Leave to appeal to the New York Court of Appeals was denied.

On April 10, 1997, Campbell filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York (Trager, *J.*) challenging the constitutionality of the courtroom closure. The district attorney's office submitted to the district court an affidavit from Officer Hinds indicating that she "continued to work in Queens, both as an undercover officer and as a 'ghost,' for three years after she testified in this case."[4] The affidavit asserted that "[a]s part of that undercover activity, she returned to the same geographic area from which she had purchased drugs from petitioner." Hinds also informed the court that, since Campbell's trial, she had made over one hundred drug-related arrests in

1. A "lost subject" is an individual who was involved in a drug transaction with the undercover officer and was not apprehended. Because, by definition, lost subjects are at large and have interacted with the undercover officer, they are thought to pose a danger to undercover officers who testify in an open courtroom. Hinds did state, however, that she had never seen a "lost subject" in the vicinity of the courthouse.

2. In addition, Officer Hinds stated that she took safety precautions when entering the courthouse on the day of the hearing. She testified that she entered the courthouse through a side entrance and then used a side staircase to the third floor. And she said that

she was escorted to the courtroom by a court officer.

3. Other than Hinds, the only other testimony offered at trial was that of the arresting officer and a police chemist who testified that the vials contained crack.

4. Initially, respondents submitted to the court an affidavit from Assistant District Attorney Kenneth V. Byrne describing a telephone conversation he had had with Officer Hinds about her work since the Campbell trial. Later, upon request from the district court, an affidavit from Hinds which confirmed the accuracy of the Byrne affidavit was submitted to the court.

Queens.[5]

On March 29, 1999, Judge Trager issued a Memorandum and Order denying Campbell's petition for habeas relief. In referring to the affidavit from Officer Hinds, he stated that:

> While this statement does not define the term 'same geographic area,' I take it to encompass at least the same location referred to at the courtroom closure hearing, an area later determined to encompass a two-mile stretch of Jamaica, Queens, an area with a large amount of drug trafficking, and an area that the New York Appellate Division for the Second Department concluded was 'near the courthouse.'

*Campbell v. Sabourin,* 37 F.Supp.2d 601, 603 (E.D.N.Y.1999). Judge Trager concluded that under these circumstances it "was not unreasonable for the state court judge to find that the risk to the officer's safety was a 'serious' one, and [that] there was, therefore, an overriding interest in the closure of the courtroom." *Id.*

This appeal followed.

## DISCUSSION

On the record before us, it is premature for us to determine whether the closure of the courtroom in this case was, ultimately, constitutionally sound. Officer Hinds's statement that, since Campbell's trial, she returned to the "same geographic area" is, on its own, too vague for this court to ascertain whether, on that basis, the state had an interest sufficiently strong to justify closure. *See Waller,* 467 U.S. at 48 (holding, *inter alia,* that for closure to be justified, "the party seeking to close the hearing must [demonstrate] an overriding interest that is likely to be prejudiced" if the courtroom is not closed); *Ayala v. Speckard,* 131 F.3d 62, 70 (2d Cir.1997) (*in banc* ) (holding that, under *Waller,* the state must present "persuasive evidence of serious risk to an important interest" in order for closure to pass constitutional muster).

■ As this court acknowledged in *Ayala,* in assessing a claim that testimony in an open courtroom will be detrimental to an officer's effectiveness, a court should focus on whether the undercover officer will be returning to the area of the defendant's arrest. *See Ayala,* 131 F.3d at 72 (noting that the officers in question "were continuing their undercover work and would soon be returning in an undercover capacity to the same areas where the defendants had been arrested."). We have also held that where closure is justified on the ground that an undercover officer could not work effectively in a particular area after testifying in open court, that area must be defined with geographic particularity. *Compare id.* at 65, 72 (holding that undercover officer's statement that she was "active in the area of 'West 42nd Street and Eighth Avenue' in Manhattan" justified closure) *with Brown v. Kuhlmann,* 142 F.3d 529, 537 (2d Cir.1998) (holding that officer's intention to return to "Brooklyn" for undercover work was inadequate, on its own, to justify closure).

Judge Trager's conclusion that, when Officer Hinds stated that she had returned to the "same geographic area from which she had purchased drugs from petitioner," she was referring to "a two-mile stretch of

---

5. The affidavit stated that Hinds "did not specifically remember petitioner Raymond Campbell or the specific facts of this case." According to the affidavit, Hinds "could not recall the specifics of this case because of the large number of 'buy and bust' cases she has worked on, and the long period of time ... since she testified in this case." The affidavit also indicated that at the time Hinds testified, she had pending before the courts buy-and-bust cases arising out of arrests made in the area in which Campbell was arrested.

Jamaica, Queens" may very well be correct. But it is not possible without further development of the record—by way of affidavits or a hearing or additional explanation by the district court of the basis for its conclusion—for this court to determine whether this is so, and, as a corollary, whether closure was appropriate on this ground.

Petitioner contends that the district court committed error by admitting the affidavits from Hinds and Assistant District Attorney Byrne. While Campbell concedes that "it was ... reasonable to allow the State to supplement the record," he insists, that "it was not reasonable for the District Court to supplement the record with affidavits only." Campbell argues that in a case such as this one, the credibility of the undercover officer is essential, and, therefore, it is improper to permit the submission of affidavits with no opportunity for cross-examination.

■■■ We have held that "[a] district court has broad discretion to hear further evidence in habeas cases." *See Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir.1999). "[A] district court is particularly justified in conducting an *ex post* hearing where the state's failure to present adequate evidence below is excusable—for example, due to a change in the governing law." *Id.* at 32. Given the decision of the New York Court of Appeals in *People v. Martinez*, 82 N.Y.2d 436, 604 N.Y.S.2d 932, 624 N.E.2d 1027 (1993), and of this court in *Ayala*, which required more particularized showings of geographical proximity between the location of the arrest of the defendant or the trial itself and the area of the undercover officer's future work than had previously been necessary to justify closure, there can be no doubt that the district court was well within its discretion when it decided to collect further evidence.

While it is, of course, possible that an affidavit could contain sufficiently specific information and ample indicia of reliability to obviate the need for a hearing, the one at issue in this case is, for the reasons explained in text, not sufficiently specific for us to determine whether the district court's decision to admit it, without conducting a hearing, was an abuse of discretion. Accordingly we express no view with respect to that question at this time. We note, however, that in *Nieblas* the district court gave petitioner an opportunity to cross-examine the undercover officer about his affidavit. *See Nieblas*, 204 F.3d at 30.

Accordingly, pursuant to our authority under *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir.1994) (acknowledging this court's authority "to retain jurisdiction while remanding to the district court to supplement the record with further findings and conclusions"), this case is REMANDED to the district court for supplementation of the record.