Justice Thomas,
with whom Justice Scalia joins, dissenting.
Today the Court summarily disposes of two important questions it left unanswered 25 years ago in Waller v. Georgia, 467 U. S. 39 (1984), and Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 U. S. 501 (1984) (Press-Enterprise I). I respectfully dissent from the Court’s summary disposition of these important questions.
First, the Court addresses “whether it is so well settled that [a defendant’s] Sixth Amendment right” to a public trial “extends to jury voir dire that this Court may proceed by summary disposition.” Ante, at 213. The Court’s affirmative answer to this question relies exclusively on Waller and Press-Enterprise I; but those cases cannot bear the weight of this answer.
The Court correctly notes that Waller answers whether a “defendant’s Sixth Amendment right to a public trial applies to a suppression hearing” (not to jury voir dire), 467 U. S., at 43, and that Press-Enterprise I interprets the public’s First Amendment right to attend jury voir dire, 464 U. S., at 509, n. 8, so neither Waller nor Press-Enterprise I expressly answers the question here, see ante, at 212-213. That ac *217 knowledgment should have eliminated any basis for disposing of this case summarily; the Court should reserve that procedural option for cases that our precedents govern squarely and directly. See, e. g., United States v. Haley, 358 U. S. 644 (1959) (per curiam) (summarily reversing a federal court’s judgment that refused to follow, or even mention, one of our precedents upholding the statute in issue under identical circumstances).
The Court nevertheless concludes that Waller and Press-Enterprise I — in combination — “well settl[e]” the “point.” Ante, at 213. It admits that “[t]he extent to which the First and Sixth Amendment public trial rights are coextensive is an open question,” but, apparently extrapolating from Press-Enterprise I, asserts that “there is no legitimate reason, at least in the context of juror selection proceedings, to give one who asserts a First Amendment privilege greater rights to insist on public proceedings than the accused has.” Ante, at 213. But this conclusion decides by implication an unstated premise: that jury voir dire is part of the “public trial” that the Sixth Amendment guarantees. As Justice Stevens recognized in Press-Enterprise I, that case did not decide this issue. See 464 U. S., at 516 (concurring opinion) (“If the defendant had advanced a claim that his Sixth Amendment right to a public trial was violated by the closure of the voir dire, it would be important to determine whether the selection of the jury was a part of the ‘trial’ within the meaning of that Amendment”). Until today, that question remained open; the majority certainly cites no other case from this Court answering it. Yet the Court does so here — even though the Supreme Court of Georgia did not meaningfully consider that question, and petitioner does not ask us to do so.* I am unwilling to decide this important *218 question summarily without the benefit of full briefing and argument.
Second, I am also unwilling to join the Court in reading the “ ‘alternatives to closure’ ” language it quotes from Waller and Press Enterprise I as squarely foreclosing the decision of the Supreme Court of Georgia. See ante, at 214. The Court chides the Supreme Court of Georgia for “conclud[ing], despite our explicit statements to the contrary, that trial courts need not consider alternatives to closure absent an opposing party’s proffer of some alternatives.” Ibid, (emphasis added). But neither Waller nor Press-Enterprise I expressly holds that jury voir dire is covered by the Sixth Amendment’s “[P]ublic [T]rial” Clause. Accordingly, it is not obvious that the “alternatives to closure” language in those opinions governs this case.
Even assuming the Court correctly extends Waller and Press-Enterprise I to this (Sixth Amendment voir dire) context, neither opinion “explicitly]” places on trial courts the burden of sua sponte suggesting alternatives to closure “absent an opposing party’s proffer of some alternatives.” Ante, at 214. The statement that a “ ‘trial court must consider reasonable alternatives to closing the proceeding,’” ibid, (quoting Waller, supra, at 48), does not definitively establish who must suggest alternatives to closure that the trial court must then consider, nor does it expressly address whether the trial court must suggest such alternatives in the absence of a proffer. I concede that the language can easily *219 be read to imply the latter, and the Court may well be right that a trial court violates the Sixth Amendment if it closes the courtroom without sua sponte considering reasonable alternatives to closure. But I would not decide the issue summarily, and certainly would not declare, as the Court does, that Waller and Press-Enterprise I “settl[e] the point” without “leaving] any room for doubt.” Ante, at 214.
Besides departing from the standards that should govern summary dispositions, today’s decision belittles the efforts of our judicial colleagues who have struggled with these issues in attempting to interpret and apply the same opinions upon which the Court so confidently relies today. See, e. g., Ayala v. Speckard, 131 F. 3d 62, 70-72 (CA2 1997) (en banc), cert. denied, 524 U. S. 958 (1998); 131 F. 3d, at 74-75 (Walker, J., concurring); id., at 77-80 (Parker, J., dissenting).. The Court’s decision will also surely surprise petitioner, who did not seek summary reversal based on the allegedly incorrect application of this Court’s well-established precedents by the Supreme Court of Georgia, but instead asked us to “resolve this split of authority” over whether “the opponent of closure must suggest alternatives to closure” or whether “those seeking to exclude the public must show that there is no available less-intrusive alternative.” Pet. for Cert. 18.

In full, petitioner’s two questions presented state:
“I. This Court has established that the public cannot be expelled from a courtroom unless the presence of the public creates a ‘substantial probability’ of prejudice to an ‘overriding interest.’ But is some case-specific evi *218 dence required to meet this ‘substantial probability’ test, or can generalized fears that would apply equally to nearly every trial suffice?
“II. This Court has repeatedly held that a trial court must consider reasonable alternatives to closing a proceeding before it can exclude the public. But who bears the burden of suggesting such alternatives? Must the proponent of closure establish that closure is necessary, in that there are no reasonable alternatives available? Or- to overcome a closure motion must an opponent of closure establish that reasonable alternatives do exist?” Pet. for Cert. i.