RESOLUCIÓN
A la moción de reconsideración, “no ha lugar”.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rivera García emitió un voto particular de conformidad, al cual se unieron el Juez Asociado Señor Martínez Torres, la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Feliberti Cintrón. El Juez Presidente Señor Hernández Denton emi-tió un voto particular disidente, al cual se unió la Juez Asociada Señora Rodríguez Rodríguez. La Jueza Asociada Señora Fiol Matta reconsideraría.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Voto particular de conformidad emitido por el Juez Aso-ciado Señor Rivera García, al cual se unen el Juez Aso-ciado Señor Martínez Torres, la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Feliberti Cintrón.
Estoy conteste con la resolución de este Tribunal en la que se deniega la solicitud de reconsideración presentada por la representación legal del Sr. Rolando Elicier Díaz. *706 Asimismo, difiero muy respetuosamente del disenso por entender que su razonamiento se aparta de los fundamen-tos jurídicos enunciados en nuestra decisión y, por ende, del estado de derecho. Distinto a como se expresa en el voto particular disidente, la Opinión mayoritaria de esta Curia se ciñe rigurosamente a los pronunciamientos del Tribunal Supremo federal en cuanto al acceso del público a los pro-cesos judiciales en el ámbito penal.
Nuevamente, la disidencia pretende desvirtuar la Opi-nión mayoritaria argumentando que la misma priva al pú-blico de tener acceso a los procedimientos que se celebran en nuestros tribunales. Nada más lejos de la realidad, pues nuestros pronunciamientos reiteran la norma pautada en Pueblo v. Pepín Cortés y otros, 173 D.P.R. 968 (2008). Veamos.
El caso de autos trata un asunto de índole constitucio-nal de extrema importancia y de la más alta jerarquía en nuestro ordenamiento jurídico. Así pues, hemos resuelto que como norma general, se favorece la apertura de los procedimientos judiciales a la ciudadanía. Ello por la razón de que un juicio público constituye, claramente, un derecho fundamental que se extiende a todo ciudadano que en-frenta un procesamiento criminal.
Con estos principios como criterio rector, acogimos los fundamentos esbozados en Pueblo v. Pepín Cortés y otros, supra y Waller v. Georgia, 467 U.S. 39 (1984). Esto es, cuando se solicita excluir al público de sala, el juez de ins-tancia debe celebrar una vista de necesidad en la cual es su deber analizar lo siguiente: (1) si la parte que solicita el cierre presenta un interés apremiante, el cual será perju-dicado de no concederse el cierre; (2) si el cierre solicitado no es más amplio de lo necesario para proteger ese interés, y (3) las alternativas razonables disponibles. Tal y como hemos apuntalado, este análisis deberá efectuarse caso a caso.
*707 De igual forma expresamos que “en las instancias en que el Ministerio Fiscal solicite la exclusión del público de la sala debido a que presentará como testigo a un agente en-cubierto, el juez de instancia deberá tener presente la norma-tiva pautada en Pueblo v. Pepín Cortés y otros, supra ...” (Énfasis suplido.) Pueblo v. Elicier Díaz I, 183 D.P.R. 167, 198 (2011). Así pues, de anunciarse la presentación de “un agente encubierto que aún sigue en funciones, deberá de-mostrar: (1) que el agente se encuentra en funciones [;] (2) que el cierre es la alternativa menos abarcadora para pro-teger la vida y seguridad de dicho agente”. (Énfasis suplido y en el original.) Id. Véase, además, Pueblo v. Pepín Cortés, supra, pág. 987.
Es precisamente la vida y seguridad de ese agente del orden público lo que constituye el interés apremiante o que hace referencia la jurisprudencia previamente esbozada. En atención a ello, aun cuando el derecho del imputado a un juicio público es fundamental, cuando se demuestra que el agente encubierto continúa en funciones y que tanto su vida y seguridad, así como la de sus seres queridos, corre peligro, ello constituye un interés apremiante que debe so-pesarse de manera adecuada por el foro judicial.
Nótese además que, contrario a lo expresado en el voto particular disidente, la identidad del agente encubierto nunca fue revelada. El mero hecho de haber sido incluido el nombre del agente en las denuncias, no equivale a que este haya sido identificado propiamente. La Real Academia Española define identidad como el “[c]onjunto de rasgos propios de un individuo o de una colectividad que los ca-racterizan frente a los demás”. Real Academia Española, Diccionario de la Lengua Española, 22da ed., Madrid, Es-pasa Calpe, 2001, T. II, pág. 1245. Cónsono con lo anterior, resulta evidente que los rasgos propios de una persona trascienden el nombre, por lo que la solicitud del Ministe-rio Público de proteger la identidad del agente no se debi-lita porque su nombre haya sido revelado. Recordemos que *708 a pesar de que su nombre real fue publicado en documen-tos judiciales, su identidad física y su alias por el que se le conoce permanecen ocultos.
Es importante puntualizar que el cierre suplicado en este caso es parcial y no total. Es decir, el Ministerio Pú-blico solicitó que se excluyera al público de la sala solo mientras el agente encubierto prestaba su testimonio. Al así proceder, la decisión de la mayoría provee un remedio racionalmente proporcional entre el derecho del imputado a un juicio público y el interés del Ministerio Público de proteger la vida y seguridad del agente encubierto que aún continúa en funciones y en investigaciones relacionadas al trasiego de sustancias controladas y armas ilegales. En ar-monía con lo anterior, expresamos lo siguiente:
Contrario a la opinión disidente, este Tribunal reafirma que la vida y seguridad de un agente encubierto que continúa tra-bajando en investigaciones de esa naturaleza, constituye un interés apremiante del Estado. Ante el justo balance de los intereses en juego, ¿no es acaso el derecho a la vida el de mayor jerarquía en nuestro ordenamiento constitucional? Contestamos en la afirmativa. No podemos ser tan ingenuos en pensar que la vida y la integridad física de un agente que se adentra en el corazón mismo de la conspiración y penetra los más oscuros recintos del crimen organizado no están en inmi-nente riesgo. Pueblo v. Elicier Díaz I, supra, pág. 203.
Ciertamente, compartimos el firme compromiso de esta Curia de fortalecer la confianza de la ciudadanía en nues-tra Rama Judicial. Ahora bien, considero que ello se logra pautando normas de Derecho que respondan a las realida-des sociales y a la alta incidencia criminal que mortifica diariamente a los casi 4 millones de habitantes de esta Isla. No podemos cruzarnos de brazos ante un pueblo que exige con vehemencia el cumplimiento de la ley y la bús-queda de la justicia.
Nuestra convicción y el claro entendimiento de los prin-cipios constitucionales más arraigados en nuestro ordena-miento jurídico, nos impiden avalar una postura que en su *709 aplicación inclina la balanza de la justicia hacia un solo lado. Por el contrario, tenemos el deber ministerial de responder afirmativamente a este reclamo, tomando como norte los principios de ley y orden según un sistema jurí-dico cuyo fin es impartir justicia con sensibilidad, absoluta imparcialidad y garantizando los derechos constitucionales de cada ciudadano.
Por los fundamentos que preceden, reitero mi voto de conformidad con el dictamen de este Tribunal que declara “no ha lugar” al petitorio de reconsideración presentado por el peticionario.