FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

June 9, 2025

**Christopher M. Wolpert**
**Clerk of Court**

SAMUEL J. BARRETT,

    Petitioner - Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS STATE
PENITENTIARY WARDEN, a/k/a
Neicole Molden, in her official
capacity; WYOMING DEPARTMENT
OF CORRECTIONS DIRECTOR,
a/k/a Daniel Shannon, in his official
capacity; WYOMING ATTORNEY
GENERAL,

    Respondents - Appellees.

No. 24-8062
(D.C. No. 1:23-CV-00234-SWS)
(D. Wyo.)

## ORDER DENYING CERTIFICATE OF APPEALABILITY*

Before **MORITZ**, **EID**, and **FEDERICO**, Circuit Judges.

Samuel J. Barrett filed a pro se application for relief under 28 U.S.C.

§ 2254, challenging his 2020 conviction in Wyoming state court. The district

court denied the application and denied a certificate of appealability (COA).

---

    * This order is not binding precedent except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Barrett now seeks a COA from this court so he can appeal the district court's judgment. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring a COA to appeal the denial of a § 2254 application). We deny a COA and dismiss this matter.

**I**

The State of Wyoming charged Barrett with six counts of first-degree sexual assault, two counts of sexual exploitation of a child, and one count of blackmail. Barrett's jury trial began in October 2020, when the COVID-19 pandemic was in full swing. On the first day of trial, Barrett objected to "the entire format procedure of the trial," arguing that the court did not "seem to be in compliance with" pandemic guidelines issued by the (presumably Wyoming) "Department of Health," and that "the difficulties posed by abiding by these guidelines, with wearing of masks, not being able to approach witnesses, they're not able to see the faces of potential jurors, . . . this whole process is a violation of due process." R. III at 1263:11–20. The court concluded that it did not "see a violation of due process under the circumstances." *Id.* at 1267:1–2.

The trial proceeded to a jury verdict of guilty on all counts. The trial court sentenced Barrett to concurrent sentences of 33 to 50 years' imprisonment on each of the six sexual-assault counts, a consecutive 10-to-12-year sentence of imprisonment on one count of sexual exploitation of a child, and lesser concurrent sentences for the remaining count of sexual exploitation of a child and the blackmail count.

Barrett appealed his conviction to the Wyoming Supreme Court (WSC), arguing that the evidence was insufficient to convict him and that the trial court abused its discretion in admitting into evidence a prior conviction for sexual abuse. The WSC affirmed. *See Barrett v. State*, 509 P.3d 940, 943 (Wyo. 2022).

Barrett then filed a petition for postconviction relief (PCR) in state court. He asserted 67 grounds for relief, including allegations of error relating to the COVID-19 procedures and ineffective assistance of appellate counsel (appellate IAC). The postconviction court (PCR Court) dismissed the petition, determining, in relevant part, that Barrett's claims were procedurally barred because they could have been raised on direct appeal and that statutory exceptions to the procedural bar did not apply because he failed to show his appellate counsel was ineffective in failing to raise the claims. Barrett sought review in the WSC on some of the claims he raised in his PCR petition. The WSC denied review.

Barrett then filed his § 2254 application in federal district court. He advanced six substantive claims, one of which comprised multiple subclaims; one claim of appellate IAC comprising seven subclaims; and a claim of cumulative error. Many of his claims involved the trial court's COVID-19 protocols. Respondents moved to dismiss the application, arguing that Barrett's claims were either not cognizable in habeas, unexhausted and subject

3

to anticipatory procedural default, or procedurally defaulted. The district court granted respondents' motion, denied the application, and dismissed it with prejudice. The court also denied a COA. Barrett sought timely review with this court.

## II

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.* For claims a district court denied "on procedural grounds without reaching the prisoner's underlying claim," the applicant must also show "that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling." *Id.*

We afford Barrett's pro se filings a liberal construction, but we may not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

4

## III

## A

In claim 1 of his § 2254 application, Barrett argued that the trial court's COVID-19 plan violated his Sixth Amendment right to a public trial because it resulted in: (1) a fully closed courtroom for voir dire; (2) a partially closed courtroom for trial because only two members of the public were allowed to attend any one trial session; and (3) the repeated refusal to allow his friends and family to enter because there was not enough space. He also argued that in response to defense counsel's objection to the "entire trial format procedure," the trial court should have considered how to accommodate the public interest in attending the trial even though the parties had offered no suggestions. R. I at 61.

The district court denied relief on this claim based on Barrett's failure to overcome procedural default through a showing of appellate IAC. The court explained that the PCR Court had determined this claim was procedurally barred because it could have been raised on direct appeal.[1] The district court then concluded Barrett could not show cause to overcome the procedural default because the claim lacked merit, and therefore appellate counsel was

---

[1] The district court also ruled that (1) Barrett's claim that the PCR Court incorrectly applied Wyoming PCR law is not cognizable in habeas and (2) the state procedural bar is independent and adequate. Barrett does not question those rulings in his COA application. We therefore address them no further.

not ineffective in failing to raise it on direct appeal. The district court observed that the trial court's COVID-19 plan did not totally close the courtroom but instead allowed the public to attend "'as space permits due to social distancing.'" R. VI at 2800 (quoting R. I at 223). The district court also noted the PCR Court had found that "Barrett's brother attended several days of the trial." *Id.* The district court concluded that Barrett had not shown "he did not receive a public trial" or "that a total closure or partial closure would have been unreasonable under the circumstances." *Id.* The court therefore concluded that Barrett could not establish cause to overcome the procedural default of claim 1 through a showing of appellate IAC.

In his COA application, Barrett makes several arguments on the merits of claim 1. We construe these arguments as an attempt to overcome the procedural default of claim 1 by showing that appellate counsel omitted a meritorious claim from the direct appeal. *See Davis v. Sharp*, 943 F.3d 1290, 1299 (10th Cir. 2019) (explaining that when assessing whether appellate IAC constitutes cause to excuse the procedural default of a claim because it was omitted from a direct appeal, "this court typically examines the merits of the omitted issue," and "[i]f the omitted issue is meritless, its omission will not constitute deficient performance" (brackets and internal quotation marks omitted)).

Barrett first contends the trial court's social-distancing requirements denied him a public trial because "no space existed for public attendance during voir dire, and at most two members of the press or public could attend the trial proceedings after voir dire." COA Appl. at 8. He argues that the trial court should have conducted an analysis under *Waller v. Georgia*, 467 U.S. 39 (1984), "before either closing the courtroom or in its response to . . . defense counsel's objection to the entirety of the proceedings." COA Appl. at 8. He adds that "the State Court made no offer of enhancing public access through any solution whatsoever, such as [a] closed-circuit feed to another area of the courthouse," a "livestream," an "audio-only stream," or "[a]ny other technological solution" other courts used during the pandemic. *Id.* at 9.

This argument does not convince us that reasonable jurists would find the district court's denial of relief on this claim to be debatable. "A district court totally closes a courtroom when it excludes all persons besides 'witnesses, court personnel, the parties, and the lawyers.'" *United States v. Veneno*, 107 F.4th 1103, 1112 (10th Cir. 2024) (emphasis added) (quoting *Waller*, 467 U.S. at 42), *petition for cert. filed*, No. 24-5191 (U.S. July 31, 2024). But even assuming that the social-distancing requirements effected a complete closure of the courtroom to the public during voir dire, the trial court had no obligation to conduct a *Waller* analysis.

In *Waller*, the Supreme Court set out the relevant test for a total closure – there must be "an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48. However, "*Waller* mandates that the district court must [apply these standards] when the courtroom is closed '*over the objections of the accused.*'" *Veneno*, 107 F.4th at 1112 (emphasis added) (quoting *Waller*, 467 U.S. at 47). Here, although defense counsel vaguely objected to the "entire format procedure of the trial," R. III at 1263, the specific objections were limited to due process concerns regarding Barrett's right to confront the witnesses against him. *See id.* Because Barrett did not specifically object to the partial exclusion, the trial court was not required to conduct a *Waller* analysis.

Barrett's argument that only two members of the press or the public were permitted to attend the trial after voir dire appears to implicate the trial court's "as space permits" limitation on how many members of the public would be admitted. This amounted to a partial courtroom closure. *See United States v. Holder*, 135 F.4th 887, 896 (10th Cir. 2025) ("Even a few attendees other than the parties creates a closure that is only partial."). A test less onerous than the *Waller* test applies to partial closures: "[w]hen the closure is partial rather than total, the defendant's right to a public trial gives way if a substantial

8

reason for the partial closure exists." *Veneno*, 107 F.4th at 1112 (internal quotation marks omitted). Even overlooking that Barrett did not specifically base his trial objection on the space-permits limitation on public attendance, there was not only a substantial reason for the partial closure, but a compelling reason – the public-health risk the COVID-19 pandemic posed. *See Holder*, 135 F.4th at 896 ("COVID is a substantial reason that justifies [a] partial closure."); *Veneno*, 107 F.4th at 1113 n.2 ("'Stemming the spread of COVID-19 is unquestionably a compelling interest[.]'" (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020))).

Barrett also claims he presented affidavits from members of his family and the community attesting that they were not allowed to enter the courtroom because there was "'no more space [ECF 1 Affidavits].'" COA Appl. at 9 (brackets in original). We have not uncovered any such affidavits in the record. But even if this were true, it shows only that the trial court limited the number of public attendees, not that it totally excluded the public. And as already stated, the trial court had a substantial reason for doing so.

Finally, Barrett contends the trial court's COVID-19 plan addressed public access only for voir dire. That isn't correct. The plan provided that the "[p]ublic will be allowed as space permits due to social distancing." R. I at 223. Although this provision is set out in the "Jury Summonses" section of the plan and not in the ensuing "Voir dire" or "Trial proceedings" sections, *id.* at 223–

9

25, it is readily apparent that the plan's sections are to be read in series, not in isolation from each other. Thus, the plan provided for public access at each later stage of the trial "as space permits." And in fact, members of the public were allowed to attend, as evidenced by Barrett's brother's attendance at the trial.[2]

In sum, Barrett has not shown that his appellate counsel omitted a meritorious Sixth Amendment public-trial claim from his direct appeal. He therefore has not shown that reasonable jurists would debate the district court's conclusion that he failed to overcome the procedural default of claim 1 through a showing of appellate IAC.

---

[2] Barrett also advances several factual assertions he did not make in the district court:

> no media coverage during the trial exists in the public domain save for one online-only article from the first day of the evidence phase (and which included no testimony from any of the accuser witnesses – the most important witnesses in the state's case); no media coverage exists in the public domain of the content of the audio and video exhibits presented to the jury; the trial transcript contains no transcripts of the audio and video exhibits presented to the jury, so the content of these exhibits is forever unavailable to the public; no single member of the public was present at all for several sessions of the evidence stage of the trial; no member of the public was present for any part of the second day of the evidence phase of the trial.

COA Appl. at 8. Because he did not present these assertions before the district court, they are "waived on appeal." *Owens v. Trammell*, 792 F.3d 1234, 1246 (10th Cir. 2015).

**B**

In claim 2 of his § 2254 application, Barrett advanced nine subclaims alleging violations of his Sixth Amendment and due process rights stemming from specific aspects of the trial court's COVID-19 plan: social distancing in the courtroom; masking requirements; the trial court's alleged violation of the plan by calling too many jurors for each venire panel, which allegedly foreclosed public attendance at voir dire; the requirement that the jury funnel requests to view digital-format exhibits in the jury room through the bailiff; the internal conflict jurors must have felt in having to risk their lives to serve; inconsistent juror experience due to seating arrangements and different information presented to each voir dire grouping; and the removal of two members of Barrett's defense team during trial because they had been exposed to COVID-19.

The district court denied these subclaims because Barrett failed to either overcome a procedural default, cite any persuasive case law on the merits, or show the subclaim was cognizable in habeas.[3]

In his COA application, Barrett's attempt to demonstrate an entitlement to a COA on claim 2 is wholly conclusory. He merely states that all of his "claims are interrelated and in some instances interdependent," and that his trial "was a failed experiment in testing the ability to conduct a complex,

---

[3] At some points in its ruling on claim 2's subclaims, and elsewhere in its decision, the district court denied relief on a claim or subclaim because Barrett had cited no clearly established federal law as determined by the United States Supreme Court. That is the standard set out in § 2254(d)(1), which prohibits granting a habeas application "with respect to any claim that was adjudicated on the merits in State court proceedings unless adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable interpretation of, clearly established Federal law, as determined by the Supreme Court of the United States."

In Barrett's case, the PCR Court did not rule on the merits of any of the substantive claims Barrett would later raise in his § 2254 application but instead determined they were procedurally barred. But the PCR Court seems to have considered the merits of the procedurally barred substantive claims, at least to some extent, when it analyzed Barrett's claims of appellate IAC as a "portal" through which he could obtain review of those claims. *See Schreibvogel v. State*, 269 P.3d 1098, 1104 (Wyo. 2012) (explaining that in Wyoming, an appellate IAC claim presented in a PCR petition is "a 'portal' through which otherwise waived claims of trial error may be raised"). Whether that constitutes an "adjudication on the merits" of a procedurally defaulted substantive claim within the meaning of § 2254(d)(1) appears to be an open question. *Cf. Cutbirth v. State*, 751 P.2d 1257, 1267 (Wyo. 1988) (indicating that "[t]he claim for relief attaching to [a claim of appellate IAC serving as a portal] *can be* resolved *without necessarily considering* the substantive merits of the issues raised" (emphasis added)). We need not address this issue today because Barrett has not complained that the district court erred by relying on his failure to meet the § 2254(d)(1) standard.

lengthy trial during an historic public health emergency; one that the [WSC] explicitly determined was faulty when it halted jury trials just days later." COA Appl. at 12 (boldface omitted). Because Barrett completely fails to meet the COA standard regarding claim 2, we deny a COA on claim 2.

## C

In claim 3, Barrett argued the jury instructions were defective because the order of the charges in the instructions was different than the order on the verdict form, and the jury was not instructed that he had to knowingly possess child pornography to convict on count 9, sexual exploitation of a child. He also complained that during closing argument, the prosecutor told the jury that to convict on count 9, it only had to find Barrett possessed child pornography. And he contended that in his direct appeal, the WSC indicated it knew count 9 required that he knowingly possessed child pornography.

The district court determined this claim was unexhausted but decided it on the merits. *See* § 2254(b)(2) (permitting a court to deny a habeas application on the merits despite a failure to exhaust state-court remedies). The court concluded that the verdict form asked whether the jury found him guilty of count 9 as charged, and the relevant instruction identified the proper mens rea – knowingly – required for conviction. With respect to the prosecutor's closing argument, the court found that contrary to Barrett's misrepresentation of the record, the prosecutor had expressly told the jury that it had to find Barrett

13

knowingly possessed child pornography. Finally, the court concluded Barrett failed to show that on direct appeal the WSC unreasonably applied the standard of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), when it concluded there was sufficient evidence to support his conviction on count 9.

In his COA application, Barrett does not address the district court's ruling at all. His sole preserved argument is that "the discrepancy in the ordering of the Counts between the jury instructions and the verdict form itself[] prevented [him] and Trial Counsel from correctly addressing the counts." COA Appl. at 13. The district court referred to this aspect of claim 3 but did not expressly address it. Nonetheless, a COA is not warranted because, as we understand it, Barrett's argument is based on mistaken references to count 3 as count 9 by (1) his own attorney during closing argument, *see* R. V at 2607:14–16 (asking for "not guilty verdicts on Counts Two and I believe it's Nine" that "depend[ed] solely upon [the] credibility" of a victim not involved in Count 9); and (2) the prosecutor's recommendation at the sentencing hearing that the court sentence Barrett to consecutive sentences on "Counts Two and Nine, . . . the counts with [that other victim]," R. III at 1130:11–14. Barrett has never explained how these misstatements prevented him from "correctly

14

addressing the counts," COA Appl. at 13, or prejudiced him. Thus, this argument does not support granting a COA on claim 3.[4]

## D

In claim 4, Barrett asserted a due process violation based on his assertion that the trial transcript omitted a statement by one of his defense attorneys that the attorney was fearful of contracting COVID-19 because his wife was immunocompromised. The statement was allegedly made in response to the trial court's inquiry whether the defense team was comfortable proceeding without two of its members who had to leave due to COVID-19 exposure. The district court appears to have decided this claim on the merits, concluding that Barrett had provided no authority supporting his due process claim and that his vague reference to due process was not enough to make the claim cognizable in habeas.

In his COA application, Barrett argues that if his attorney's statement had been preserved in the transcript, he could have demonstrated that the attorney had a conflict between his wife's health and defending Barrett. Barrett contends this claim presents "an issue of first impression." COA Appl. at 16. But Barrett wholly overlooks that he was present when (or if) counsel

---

[4] Barrett also claims there was insufficient evidence to support a conviction on Count 5, which charged him with sexual assault of one of the victims. Barrett did not advance this claim in his § 2254 application, so it is also "waived on appeal." *Owens*, 792 F.3d at 1246.

made his statement about COVID-19 concerns to the trial court. *See* R. III at 1077 (letter from Barrett to one of his trial attorneys providing his "recollection" of what the attorney told the trial court). Thus, there is no merit to his contention that an alleged omission of the statement from the transcript violated his due process rights by preventing him from pursuing relief, either on direct appeal or, as he claimed in his § 2254 application, in his post-conviction proceedings, *see* R. I at 157. A COA is not warranted on claim 4.

## E

In claim 5, Barrett argued that the proximity of jurors to the defense table violated his right to continuously confer with counsel. *See* R. I at 159. The district court determined that claim 5 was a duplicate of claim 2(a) and denied claim 5 for the same reasons it denied claim 2(a): the claim was procedurally defaulted, Barrett could not show cause and prejudice to excuse the default because the cases he relied on were distinguishable, and he did not identify anything he was unable to say to counsel due to the jury's proximity or explain why he could not use other methods of communication, such as written notes.

In his COA application, Barrett contends that under *Geders v. United States*, 425 U.S. 80 (1976), "deprivation of [a] substantial right to effective assistance of counsel assumes prejudice." COA Appl. at 16. That is true, at least where a court order prohibits a defendant from communicating with his attorney. *See Geders*, 425 U.S. at 92 ("[A]s the Court holds, a defendant who

16

claims that an order prohibiting communication with his lawyer impinges upon his Sixth Amendment right to counsel need not make a preliminary showing of prejudice." (Marshall, J., concurring)). But in Barrett's case there was no prohibitive court order, and Barrett offers nothing to call into question the district court's determination that he failed to show he was deprived of effective assistance of counsel. Barrett adds that because of the pandemic and the trial court's COVID-19 plan, this is "an issue of first impression." COA Appl. at 16. However, there is nothing novel in the legal issue involved in this claim, and a COA is not warranted on claim 5.

## F

In his one-paragraph claim 6, Barrett argued that the trial court deprived him of due process when it overruled defense counsel's objection to the COVID-related trial format without "consider[ing] the impacts on Barrett's rights of a closed trial." R. I at 160. The district court concluded that Barrett failed to show cause to overcome the procedural default of this claim because he did not "demonstrate that the trial court's decision was a violation of clearly established law"; the claim's substance "seems to be incorporated into the various other arguments under claims one and two"; and, as the court had discussed in relation to those claims, "Barrett failed to demonstrate he was entitled to relief" on them. R. VI at 2829.

In his COA application, Barrett merely reproduces the one-paragraph argument from his § 2254 application. He adds that claim 6 presents "an issue of first impression." COA Appl. at 17. Barrett fails to demonstrate that reasonable jurists would debate the district court's resolution of this claim. A COA is not warranted on claim 6.

## G

Barrett's claim 7 comprises seven subclaims of appellate IAC. The district court determined these subclaims failed on the merits for a variety of reasons. In his COA application, Barrett provides only conclusory arguments that his appellate attorney "failed to investigate the trial record, witnesses, and [Barrett's] claims"; "failed to pursue non-frivolous issues and constitutional issues such as [Barrett's] conviction on Count Five, for which no evidence was offered in support of the essential element of location: 'by Eastridge Mall'"; and "failed to timely provide the trial record to [Barrett] and to obtain [Barrett's] consent to file the Direct Appeal brief." COA Appl. at 17. These conclusory arguments are insufficient to demonstrate that reasonable jurists would find the district court's disposition of any of the appellate IAC subclaims debatable or wrong. We therefore decline to recite the district court's rulings on these subclaims, and we deny a COA on claim 7.

18

## H

In claim 8, Barrett argued that cumulative error required relief. The district court determined there could be no cumulative error because the court had not identified any individual errors. In his COA application, Barrett "argues that the accumulated impact of the Coronavirus Pandemic on his trial rendered the trial so debased from the normal, statutory and constitutional procedures as to cause the outcome to be in doubt." COA Appl. at 18. He also claims "[t]his is an issue of first impression." *Id.* But because he has not shown entitlement to a COA on any issues, he also has not shown error in any of the individual claims. *See Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003) ("A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." (internal quotation marks omitted)).

## IV

We DENY Barrett's COA application and DISMISS this matter.

Entered for the Court

Richard E.N. Federico
Circuit Judge